No. 17-1036

------

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

------

Nalco Company,

*Plaintiff-Appellant,*

v.

Chem-Mod, LLC; Arthur J. Gallagher & Co.; Gallagher Clean Energy, LLC; AJG Coal, Inc.; AJG Iowa Refined Coal LLC; Mansfield Refined Coal LLC; Cope Refined Coal LLC; Cross Refined Coal LLC; Jefferies Refined Coal LLC; Joppa Refined Coal LLC; Thomas Hill Refined Coal LLC; Wagner Coaltech LLC; Walter Scott Refined Coal LLC; Winyah Refined Coal LLC; Bedford Mix LLC; Brandon Shores Coaltech LLC; Canadys Refined Coal LLC; Coronado Refined Coal LLC; FRM Trona Fuels LLC; FRM Virginia Fuels LLC; George Neal North Refined Coal LLC; George Neal Refined Coal LLC; Louisa Refined Coal, LLC; Refined Fuels of Illinois, LLC; and Belle River Fuels Company, LLC,

*Defendants-Appellees.*

------

Appeal from the United States District Court for the Northern District of Illinois, No. 1:14-cv-02510, the Honorable John W. Darrah

------

## BRIEF FOR DEFENDANTS-APPELLEES

------

<table>
<tr>
<td>

Steven E. Feldman
Sherry L. Rollo
HAHN LOESER & PARKS
125 South Wacker Dr.
Suite 2900
Chicago, IL 60606
Tel: (312) 637-3000

</td>
<td>

Richard W. Mark
  *Principal Attorney*
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-3818
Fax: (212) 351-5338
rmark@gibsondunn.com

</td>
</tr>
</table>

*Counsel for Defendants-Appellees*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Nalco Company     **v.**     Chem-Mod, LLC et al.

Case No.    17-1036

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Chem-Mod, LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Arthur J. Gallagher & Co. | None | None |
| Gallagher Clean Energy, LLC | None | Arthur J. Gallagher & Co. |
| AJG Coal, Inc. | None | Arthur J. Gallagher & Co. |
| AJG Iowa Refined Coal, LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Mansfield Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Cope Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Richard W. Mark; Joseph Evall; Paul J. Kremer; David Glandorf; Kristine Beaudoin - Gibson, Dunn, & Crutcher LLP
Steven Feldman; Sherry Rollo - Hahn Loeser LLP; Husch Blackwell LLP

Oct 27, 2016

Date

/s/ Richard W. Mark

Signature of counsel

Please Note: All questions must be answered

Richard W. Mark

Printed name of counsel

cc:   All counsel of record via CM/ECF

Reset Fields

Certificate of Interest (cont'd):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Cross Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Jefferies Refined Coal, LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Joppa Refined Coal, LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Thomas Hill Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Wagner Coaltech LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Walter Scott Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Winyah Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| Bedford Mix LLC | None | (1) Ingredion Incorporated; (2) FRM Refined Fuels LLC |
| Brandon Shores Coaltech LLC | None | (1) Arthur J. Gallagher & Co. (via non-public subsidiary); (2) SCANA Corporation (via non-public subsidiary) |

| | | |
|---|---|---|
| Canadys Refined Coal, LLC | None | (1) Arthur J. Gallagher & Co. (via non-public subsidiary);<br><br>(2) SCANA Corporation (via non-public subsidiary) |
| Coronado Refined Coal LLC | None | Arthur J. Gallagher & Co. (via non-public subsidiary) |
| FRM Trona Fuels | None | (1) Nirma (d/b/a Searles Valley Minerals Operation Inc.);<br><br>(2) FRM Refined Fuels LLC |
| FRM Virginia Fuels LLC | None | FRM Refined Fuels LLC |
| George Neal North Refined Coal LLC | None | (1) Arthur J. Gallagher & Co. (via non-public subsidiary);<br><br>(2) RCF GNN, LLC |
| George Neal Refined Coal LLC | None | (1) Arthur J. Gallagher & Co. (via non-public subsidiary);<br><br>(2) RCF GNS, LLC |
| Louisa Refined Coal, LLC | None | (1) Arthur J. Gallagher & Co. (via non-public subsidiary);<br><br>(2) SCANA Corporation (via non-public subsidiary);<br><br>(3) LyondellBasell Industries N.V. |
| Refined Fuels of Illinois, LLC | None | FRM Refined Fuels LLC |
| Belle River Fuels Company, LLC | None | DTE Energy Co. (via non-public subsidiary) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF RELATED CASES .................................................... ix

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE AND FACTS ...........................................3

I.  The Chem-Mod Solution Is a Process for Making Refined Coal. .................4

II.  The Claims of the '692 Patent Require "Injecting" Chemicals "Into . . . Flue Gas."..........................................................................6

III.  The Patent Owner Explained "Flue Gas" During Reexamination. .................7

IV.  The Proceedings Below. ..................................................................9

   A.  The District Court Dismisses Nalco's First Amended Complaint for Failure to State a Claim That Use of the Chem-Mod Solution Is Infringing. ...........................................9

   B.  Nalco's Second and Third Amended Complaints Also Fail to State a Claim for Infringement.............................................11

      1.  Nalco's Second and Third Amended Complaints. ...................11

      2.  The District Court Dismisses Nalco's Third Amended Complaint for Multiple Independent Reasons. .........................14

   C.  The District Court Dismisses Nalco's Fourth Amended Complaint with Prejudice....................................................16

      1.  Nalco's Fourth Amended Complaint. .......................................16

      2.  The District Court Dismisses the 4AC with Prejudice, for the Same Multiple Independent Reasons.................................17

D.    The District Court Denies Nalco's Rule 59(e) Motion for
      Reconsideration. ...................................................................19

SUMMARY OF ARGUMENT ............................................................20

STANDARD OF REVIEW ................................................................22

ARGUMENT ....................................................................................23

I.    THE 4AC DOES NOT STATE A CLAIM FOR DIRECT
      INFRINGEMENT. .....................................................................23

      A.    The 4AC's Allegations About the Chem-Mod Solution Belie a
            Claim of Direct Infringement. ............................................23

      B.    The Dismissal Was Procedurally Proper ...............................28

            1.    The District Court Did Not Need to, and Did Not,
                  Construe the Claims. ...............................................29

            2.    The District Court Appropriately Used the "Broadest
                  Possible Construction" to Evaluate the Sufficiency of the
                  Infringement Claims. ...............................................31

            3.    Nalco Cannot Rely on Materials Submitted After
                  Dismissal to Save the 4AC. ......................................32

            4.    Nalco's "Notice" Argument Is a Red Herring, Because
                  Lack of Notice Is Not the Problem. ..........................35

            5.    Nalco's Assertion That the 4AC Complied with Form 18
                  Is Irrelevant and False. ...........................................36

II.   DISMISSAL IS ALSO WARRANTED BECAUSE THE 4AC
      FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT
      AGAINST ANY NAMED DEFENDANT. ..................................37

A.  Nalco Waived Its Challenge to the District Court's Dismissal Based on the 4AC's Failure to Allege that Any Individual Defendant Directly Infringes the Patent..............................................38

B.  The 4AC Does Not Plead That Any Named Defendant Performs, or Is Responsible for Performing, the Alleged Acts of Infringement. ......................................................40

    1.  The 4AC Does Not Plead That Any Defendant Burns the Refined Coal. ..........................................................40

    2.  The 4AC Does Not Plead That Any Named Defendant Is Responsible for Burning the Refined Coal. .............................41

C.  The 4AC Fails to State a Direct Infringement Claim Based on Sales of Refined Coal, the Chemicals Used to Prepare Refined Coal, or the Chem-Mod Solution Itself................................44

III.  THE 4AC DOES NOT STATE A CLAIM FOR INDIRECT OR WILLFUL INFRINGEMENT.........................................................46

A.  There Can Be No Indirect or Willful Infringement Absent Direct Infringement. ...........................................................46

B.  Nalco Does Not Challenge the District Court's Dismissal of the 4AC's Indirect Infringement Claims Based on the 4AC's Failure to Plead Other Elements of Those Claims. .............................47

IV.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING THE 4AC "WITH PREJUDICE." ..................................50

V.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING NALCO'S RECONSIDERATION MOTION. ...................54

CONCLUSION ...................................................................58

SUPPLEMENTAL ADDENDUM .......................................................59

**TABLE OF AUTHORITIES**

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n,*
  683 F.3d 328 (7th Cir. 2012) ................................................................34

*Ahr v. Commonwealth Edison Co.,*
  No. 03 C 6645, 2005 WL 6115023 (N.D. Ill. Feb. 24, 2005) ...........34

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
  499 F.3d 663 (7th Cir. 2007) ................................................20, 22, 52

*Ajinomoto Co. v. Int'l Trade Comm'n,*
  597 F.3d 1267 (Fed. Cir. 2010) ..........................................................40

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
  797 F.3d 1020 (Fed. Cir. 2015) ....................................................42–43

*Alstom Power Inc. v. Hazelmere Research Ltd.,*
  Appeal No. 2013-008262, 2013 WL 6681601 (P.T.A.B. Dec. 17,
  2013) ..............................................................................................7–9, 27

*In re Am. Acad. Of Sci. Tech. Ctr.,*
  367 F.3d 1359 (Fed. Cir. 2004) ............................................................8

*Arreola v. Godinez,*
  546 F.3d 788 (7th Cir. 2008) ..............................................................53

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................26–28, 42

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.,*
  682 F.3d 1003 (Fed. Cir. 2012) ..........................................................47

*Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,*
  377 F.3d 682 (7th Cir. 2004) ..............................................................23

*Bible v. United Student Aid Funds, Inc.,*
  799 F.3d 633 (7th Cir. 2015) ..............................................................33

*In re Bill of Lading Trans. & Processing Sys. Patent Litig.,*
  681 F.3d 1323 (Fed. Cir. 2012) ......................... 22, 24, 29–30, 47, 49

iv

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ...............................................22–23, 25

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ..................................................47

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
   90 F.3d 1264 (7th Cir. 1996) ...................................................54

*Camp v. Gregory*,
   67 F.3d 1286 (7th Cir. 1995) ...................................................55

*Cincinnati Life Ins. Co. v. Beyrer*,
   722 F.3d 939 (7th Cir. 2013) ...................................................22

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016)............................................................30

*Early v. Bankers Life and Cas. Co.*,
   959 F.2d 75 (7th Cir. 1992) .................................................34–35

*Fannon v. Guidant Corp.*,
   583 F.3d 995 (7th Cir. 2009) ...................................................55

*Firestone Financial Corp. v. Meyer*,
   796 F.3d 822 (7th Cir. 2015) ...................................................27

*Foman v. Davis*,
   371 U.S. 178 (1962)..........................................................50, 53

*Foster v. DeLuca*,
   545 F.3d 582 (7th Cir. 2008) ...................................................52

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ...............................................47

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) ...............................................29

# TABLE OF AUTHORITIES
### (continued)

*Harrington v. City of Chi.*,
  433 F.3d 542 (7th Cir. 2006) ................................................................54

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ................................................................54

*Highsmith v. Chrysler Credit Corp.*,
  18 F.3d 434 (7th Cir. 1994) ...........................................................34–35

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ..............................................................45

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
  665 F.3d 930 (7th Cir. 2012) ................................................................52

*Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*,
  No. 3:11-cv-2214, 2014 WL 2531973 (S.D. Cal. June 4, 2014)........................45

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ..................................................................44

*Juniper Networks, Inc. v. Shipley*,
  643 F.3d 1346 (Fed. Cir. 2011) ............................................................28

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ............................................................36

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  134 S. Ct. 2111 (2014)................................................................40–41, 45

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006) ............................................................39

*Lyda v. CBS, Inc.*,
  838 F.3d 1331 (Fed. Cir. 2016) .........................................29, 36, 42, 52

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ............................................................45

# TABLE OF AUTHORITIES
(continued)

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ..................................................45–46

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .........................................................30

*Orthmann v. Apple River Campground, Inc.*,
  757 F.2d 909 (7th Cir. 1985) ...............................................23, 34–35

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
  678 F.3d 1280 (Fed. Cir. 2012) .........................................................39

*Runnion v. Girl Scouts of Greater Chi.*,
  786 F.3d 510 (7th Cir. 2015) ..............................................................53

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) ...........................................................50

*Sigsworth v. City of Aurora, Ill.*,
  487 F.3d 506 (7th Cir. 2007) ..............................................................55

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ...........................................38–39, 48

*Stanard v. Nygren*,
  658 F.3d 792 (7th Cir. 2011) ..............................................................50

*Superior Indus., LLC v. Thor Global Enters.*,
  700 F.3d 1287 (Fed. Cir. 2012) ....................................................47–48

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015)..........................................................................26

*Thomason v. Nachtrieb*,
  888 F.2d 1202 (7th Cir. 1989) ...........................................................33

*Trevino v. Union Pac. R. Co.*,
  916 F.2d 1230 (7th Cir. 1990) ...........................................................37

*Twohy v. First Nat'l Bank of Chi.*,
  758 F.2d 1185 (7th Cir. 1985) .......................................................... 54

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) ........................................................ 30

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) ........................................................... 40

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ........................................................... 39

**Statutes**

26 U.S.C. § 45(a)(2) ........................................................................... 42

26 U.S.C. § 45(c)(7)(A)(i) ................................................................. 42

26 U.S.C. § 45(e)(8) ........................................................................... 12

35 U.S.C. § 271(a) ............................................................................. 45

35 U.S.C. § 271(c) ........................................................................ 47, 49

**Rules**

FED. R. CIV. P. 8(a) ......................................................................... 35–36

FED. R. CIV. P. 11 ......................................................................... 11, 16

FED. R. CIV. P. 12(b)(6) .................................... 10, 14, 22–23, 29, 35–36

FED. R. CIV. P. 15(a)(2) ...................................................................... 50

FED. R. CIV. P. 59(e) ........................................ 19–20, 22, 52, 54–55

**Treatises**

Restatement (2d) of Torts § 491 cmt. c (1965) ...................................... 43

**STATEMENT OF RELATED CASES**

No other appeal in or from the same civil action in the district court was previously before this or another appellate court. Counsel for Defendants-Appellees know of no other case that will directly affect or be directly affected by this Court's decision in this case.

## PRELIMINARY STATEMENT

The district court gave Nalco multiple opportunities to describe the accused process and to plead facts rendering its claims of infringement plausible. Nalco did not meet its pleading burden, and the district court properly dismissed the Fourth Amended Complaint ("4AC") with prejudice.

The district court's three opinions granting motions to dismiss Nalco's serial amended pleadings each held that the accused process, as described by Nalco, does not fall within the broadest possible construction of the patent claims. The district court's first two decisions identified the factual deficiencies in Nalco's complaint and were without prejudice. When Nalco once again failed to plead facts rendering its claims of infringement plausible, the district court exercised its discretion to dismiss the 4AC with prejudice. The district court also dismissed Nalco's direct infringement claims with prejudice for the additional reason that Nalco repeatedly failed to plead that any Defendant performed the acts accused of infringement—separate grounds from which Nalco does not appeal.

When the district court dismissed the 4AC with prejudice, Nalco (not having sought leave to re-plead) moved for reconsideration. Without stating, applying, or meeting the standard for reconsideration, Nalco submitted for the first time hundreds of pages of previously available material, arguing that it could have used those materials to fashion allegations that would at last state a claim for infringement. The

district court properly rejected Nalco's attempt at a back-door amendment after the 4AC was dismissed with prejudice and denied the motion for reconsideration.

On appeal, Nalco tries to repair the defective allegations of the 4AC by using the material that was included in its reconsideration motion. Br. 4–34 (Statement of Case containing 78 references to reconsideration materials). Such material is entirely irrelevant to whether the 4AC states a claim for infringement, or whether the 4AC was properly dismissed with prejudice—it was not included in the 4AC, in Nalco's opposition to the motion to dismiss, in a proposed amended complaint, or in support of a motion to amend. Having chosen not to put any of those "reconsideration materials" before the district court in connection with the Defendants' three motions to dismiss, Nalco cannot amend its complaint on appeal or create a different record and set of issues before this Court.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly dismissed Nalco's 4AC for failure to state a claim for direct infringement where the 4AC's allegations show that the broadest possible construction of the patent claims cannot plausibly cover the accused process.

2. Whether the district court correctly dismissed the 4AC for failure to state a claim for direct infringement where the 4AC does not allege that any

Defendant is responsible for performing all the steps of the accused process, and whether Nalco has waived any challenge to the district court's rulings on this issue.

3.     Whether the district court correctly dismissed the 4AC's claims for indirect and willful infringement, and whether Nalco has waived any challenge to this ruling on appeal.

4.     Whether the district court properly exercised its discretion by dismissing the 4AC with prejudice where Nalco:  (i) did not overcome the specific defects the district court identified in two decisions dismissing Nalco's prior complaints; (ii) did not request leave to re-plead or show that it could re-plead successfully; and (iii) never argued that the "with prejudice" dismissal sought by the Defendants would be improper.

5.     Whether the district court properly exercised its discretion by denying Nalco's motion for reconsideration of the "with prejudice" dismissal of the 4AC, where:  (i) the court dismissed "with prejudice" after giving Nalco two opportunities to re-plead; and (ii) in seeking reconsideration, Nalco relied entirely on arguments and material that were not presented to the district court on the serial motions to dismiss, but that were available to Nalco since before it commenced the action.

## STATEMENT OF THE CASE AND FACTS

Nalco's 4AC describes the "Chem-Mod Solution," the Defendants' process for adding chemical sorbents to cold coal to make "refined coal," which is

subsequently burned by non-parties to generate energy. It also describes feeding refined coal into furnaces to be combusted—an activity that is also accused, but that no named Defendant is alleged to perform.

From its initial complaint through the 4AC two years later, Nalco asserted its infringement claims through detailed allegations concerning the Chem-Mod Solution, including schematics and descriptions drawn from Chem-Mod documents that Nalco had obtained on its own before bringing suit. That material comprises the district court record on the motions to dismiss, and the Defendants' statement of facts is drawn from that record.

## I.     The Chem-Mod Solution Is a Process for Making Refined Coal.

The 4AC pleads that 21 "Refined Coal LLC" Defendants use the "Chem-Mod Solution" to prepare "refined coal" by mixing coal with, among other chemicals, "MerSorb." *See* Appx2116 ¶ 27 ("In the Chem-Mod Solution, the proprietary additive MerSorb is mixed with coal . . . ."); Appx2162–77; Appx2425 ("The Chem-Mod Solution involves the application of specific chemical reagents before the combustion process. . . ."); Appx2218 (photograph of a "refined coal production facility"); Appx2378–80 (photographs showing that "refined coal returns" to storage after manufacturing). MerSorb, a commercially available industrial product, is an aqueous "sorbent" that contains calcium bromide. *See* Appx2462 (4AC) (alleging that MerSorb is an "aqueous solution").

Power plants that burn refined coal emit less mercury into the atmosphere than when untreated coal is burned.  Appx2123 (4AC) ¶ 52.  The 4AC characterizes the coal pre-treatment process used in the Chem-Mod Solution as "an alternative" to emission reduction systems that operate by injecting sorbents "into the exhaust pipes of a coal furnace to capture the mercury after combustion."  Appx2425.[1]

The 4AC depicts as separate and distinct the operation where refined coal is *made* using the Chem-Mod Solution (*i.e.*, "Clean Coal Plants" positioned outside of commercial power plants) and the operation where such refined coal is *used* (inside those commercial power plants).  *See* Appx2381:

---

[1]  The 4AC's allegations concerning the execution of the Chem-Mod Solution are fundamentally unchanged from those in Nalco's previous complaints.  The district court cited the same statement (Appx2425) as grounds for dismissing the first amended complaint, to which it was also attached.  *See* Appx494.



Nalco's opening brief incorporates the foregoing diagram from Nalco's 4AC, wherein the power plant is the chimney-topped building that contains the "Boiler (Furnace)." *See* Br. 7. But Nalco's opening brief cuts out a significant feature of the diagram—*i.e.*, the labeled green oval depicting where refined coal is made. *See id.* & n.1 (where Nalco altered "for clarity" part of the original Chem-Mod diagram that was included in Nalco's pleading). As incorporated into the 4AC, and as reproduced above, the diagram shows that the Chem-Mod Solution for making refined coal is performed ***outside*** of the furnace (and outside of the power plant).

## II. The Claims of the '692 Patent Require "Injecting" Chemicals "Into . . . Flue Gas."

Each claim of reissued U.S. Patent No. 6,808,692 (the "'692 Patent") is directed to a "method of treating coal combustion flue gas containing mercury."

Appx27–28. Each claim includes the step of "injecting" a halide compound "into . . . flue gas," and requires that the halide compound be a "thermolabile molecular halogen precursor." *Id.* Claim 1, in which the halogen is bromine, is representative:

> A method of ***treating coal combustion flue gas*** containing mercury, comprising: ***injecting a bromide compound*** that is a thermolabile molecular bromine precursor ***into said flue gas*** to effect oxidation of elemental mercury to a mercuric bromide and providing alkaline solid particles in said flue gas ahead of a particulate collection device, in order to absorb at least a portion of said mercuric bromide.

Appx27 (emphases added).

## III.  The Patent Owner Explained "Flue Gas" During Reexamination.

The '692 Patent originally issued in 2004.  Five years later, Nalco asserted the patent against non-party Alstom Power Inc., leading Alstom to initiate an *inter partes* reexamination under 35 U.S.C. §§ 311–318 and 37 C.F.R. §§ 1.902–1.997. *See Alstom Power Inc. v. Hazelmere Research Ltd.*, Appeal No. 2013-008262, 2013 WL 6681601, at *1 & n.3 (P.T.A.B. Dec. 17, 2013) (identifying Nalco Mobotec, Inc. as a real party in interest).

The original issued claims required the injection of a "thermolabile molecular halogen precursor." Appx2369–70.  Alstom argued inoperability, by focusing on the temperature of flue gas. *Alstom Power*, 2013 WL 6681601, at *7.  In response,

Nalco explained that "flue gas" should not be defined in terms of temperature; rather, Nalco defined "flue gas" in terms of its location in the system:

> "flue gas" refers to combustion gases which *reside in the "flue"*—the region of a coal combustor *from above the combustion zone* through the particulate collection system.

Appx4816 (emphases added). Nalco underscored its description of flue gas by location, not temperature:

> "flue gas" means that region of combustion gases *from the upper furnace region* through the emission control devices.

*Id.* (emphasis added).

The PTAB applied the rule that, on reexamination, patent claims "are to be given their broadest reasonable interpretation consistent with the specification." *Id.* at *3 (quoting *In re Am. Acad. Of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004)). Under that "broadest reasonable interpretation," there was no explicit *temperature* restriction on "flue gas," and accordingly, the PTAB described flue gas by its location, explaining that flue gas is not *all* of the combustion gas, but rather only the gas "*between* the boiler and the stack outlet." *Alstom Power*, 2013 WL 6681601, at *4 (emphasis added); *see also id.* (finding that "flue gas" can include combustion gases "at temperatures up to 1260°C or higher," ranging from "the upper portion of a furnace (2300°F [1260°C])" through "the outlet of a wet scrubber (150°F

[66°C]),” and rejecting the temperature range “typical at the coal input to the boiler (3000°F [1649°C])” (alterations in original)).

The PTO issued the reexamination certificate on April 7, 2014.  Appx26.

## IV.  The Proceedings Below.

### A.  The District Court Dismisses Nalco’s First Amended Complaint for Failure to State a Claim That Use of the Chem-Mod Solution Is Infringing.

Nalco filed its original complaint the next day, naming Chem-Mod LLC (“Chem-Mod”) as the sole Defendant.  With the court’s permission, Nalco filed its First Amended Complaint (“1AC”) three months later, naming two more Defendants, Arthur J. Gallagher & Co. and Gallagher Clean Energy, LLC.  None of the Defendants named in the 1AC operates a commercial power plant or sells refined coal, or was alleged to do so.

The 1AC alleged that the Chem-Mod Solution is a process for pre-treating coal by mixing it with “MerSorb” and “S-Sorb,” two sorbents that “contain significant amounts of calcium bromide and lime, respectively.”  Appx65 ¶ 17.  Nalco alleged that this “dual injection” of two sorbents takes place “on the coal feed belts of coal burning power generation stations *before* the coal is fed into a coal combustion process.”  *Id.* (emphasis added).  Nalco incorporated Chem-Mod documents into the 1AC showing that the facilities where MerSorb and S-Sorb are applied to coal are separate and distinct from the power plants that use the refined

coal, including the diagram with the green oval reproduced above. *See, e.g.*, Appx92. The 1AC expressly characterized the Chem-Mod Solution as "an alternative" to "inject[ing] . . . into the exhaust pipes of a coal furnace. . . ." Appx136.

The Defendants moved to dismiss the 1AC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that it was implausible to read the asserted patent claims to cover the process for using the Chem-Mod Solution. In response, Nalco argued that dismissal would be improper without discovery and a full claim construction hearing. *See* Appx225–26, Appx231–32. Nalco did not explain how the claims could plausibly be construed to cover the accused process. Nor did it proffer a further amended complaint or explain how it could cure the defects identified in the motion to dismiss.[2]

On February 4, 2015, the district court granted the Defendants' motion, holding that the 1AC "contradict[s]" a finding of direct infringement, because "according to the [1AC] itself, the '692 Patent differs from the Chem-Mod Solution

---

[2] While the motion to dismiss was pending, Nalco sought and obtained initial disclosures under Local Patent Rules 2.1–2.3, including a document production and the exchange of initial infringement and noninfringement contentions. Appx274–77. Although the Defendants produced actual site schematics showing clean coal plants (*i.e.*, refined coal facilities) that perform the Chem-Mod Solution, Nalco did not incorporate any of these documents into its infringement contentions or any subsequent pleading.

in both ***when*** it is applied (after the coal is burned vs. before the coal is burned) and ***how*** it is applied (injected into the flue gas vs. mixed with cold coal)." Appx495 (emphases added). The court "disregarded" Nalco's "suggest[ion]," made for the first time in briefing, that the Chem-Mod Solution "may also be applied in a different manner" than pleaded, because Nalco had "not properly alleged facts . . . supporting this argument." Appx495 n.2. Finally, the court dismissed Nalco's claims of indirect infringement because the 1AC failed to state a claim for direct infringement. Appx495–96.

The court dismissed the 1AC without prejudice, granting Nalco leave to re-plead "if it can do so pursuant to Rule 11." Appx496.

### B. Nalco's Second and Third Amended Complaints Also Fail to State a Claim for Infringement.

#### 1. Nalco's Second and Third Amended Complaints.

Nalco's Second Amended Complaint ("2AC") named the three 1AC Defendants, and added as parties AJG Coal, Inc. and 34 unnamed refined coal facilities that allegedly make refined coal using the Chem-Mod Solution and sell it to unnamed power plant operators. Appx518–19 ¶¶ 38–40. Nalco asserts that the non-party power plant operators that ***purchase*** "refined coal" receive tax credits for making those purchases, Br. 5, but that is wrong. Under the Internal Revenue Code, the tax credit goes to the entity ***selling*** "refined coal" (here, the refined coal facilities)

11

to another entity that must be "unrelated" (here, the unnamed power plant operators).

*See* 26 U.S.C. § 45(e)(8).

The 2AC presented the same infringement theory as its predecessor complaints:

> In the Chem-Mod Solution, the proprietary additive MerSorb is ***mixed with coal*** (the "Chem-Mod Solution Mixture").

Appx515 ¶ 26 (emphasis added).

Nalco then expanded its allegations to target acts performed by coal-fired power plant operators, but Nalco—which itself seeks to do business with those operators—did not name any such plant operators as defendants. It alleged a second theory about what constitutes "injection" of a bromide compound "into . . . flue gas":

> The Chem-Mod Solution Mixture is ***then*** injected into coal combustion flue gas to effect oxidation of elemental mercury into a mercuric bromide.

*Id.* (emphasis added).

With respect to Nalco's first "injection" theory—*i.e.*, the addition of MerSorb to coal—the 2AC incorporated the same documents Nalco had incorporated into its earlier complaint, and so repeated allegations that distinguish the Chem-Mod Solution from the claimed process. *See, e.g.*, Appx685 (describing Chem-Mod Solution as an "alternative" to post-combustion "injection"); Appx515 ¶ 26 (alleging MerSorb is "mixed with coal"). The 2AC added a Chem-Mod schematic that depicts three "Reagent Injection Options" for applying MerSorb to coal—all

*preceding* the plant furnace. Appx515 ¶ 27. Nalco also attached its infringement

contentions, which rely entirely on the same schematic that purportedly

demonstrates "injecting . . . into . . . flue gas." *See, e.g.*, Appx695.[3]

For its second "injection" theory, Nalco alleged that feeding the refined coal

(which it termed the "Chem-Mod Solution Mixture") into an operating power plant

furnace for combustion also constitutes "injecting" a bromide compound "into . . .

flue gas." Appx515 ¶¶ 25–27.

In two new paragraphs, Nalco "attempted to address" the district court's

description of the differences between the claimed method and the use of the Chem-

Mod Solution. Br. 3; *see* Appx513–14 ¶¶ 18, 20 ("The claims of the '692 Patent do

not restrict when the step of 'injecting . . . into said [coal combustion] flue gas' must

be performed," "the specific mechanism by which" it must be performed, or the

"location . . . at which the claimed 'injecting' must occur.").

The Defendants moved to dismiss the 2AC, with prejudice. Nalco amended

the 2AC to replace the "John Doe" refined coal facilities with the 21 Refined Coal

LLCs that allegedly operate them, but did not alter its allegations regarding the

relationships between the operators of the Refined Coal LLCs, on the one hand, and

---

[3] This same schematic, and Nalco's infringement contentions, would be
reproduced in each of Nalco's subsequent amended complaints.

their power plant customers, on the other. *See* Appx1438 (Nalco's Third Amended Complaint, or "3AC") ¶ 11.[4] The Defendants' motion to dismiss the 2AC was deemed filed against the 3AC. Appx1427.

The Defendants argued that the 3AC did not plausibly allege that the patent claims cover the use of the Chem-Mod Solution or the burning of refined coal, and also that there was no allegation that *any* Defendant actually performed (or was responsible for the performance of) the newly accused step of feeding the refined coal into the furnace of the coal-burning plants.

### 2. The District Court Dismisses Nalco's Third Amended Complaint for Multiple Independent Reasons.

In opposing the motion to dismiss, Nalco once again argued that any ruling on the Defendants' Rule 12(b)(6) motion should await claim construction, but Nalco did not seek leave to amend; propose an amended complaint; or even proffer facts supporting a claim construction that would plausibly cover the accused process. Nalco also argued that the Refined Coal LLC Defendants necessarily exercise direction and control over the non-party power plant operators who burn coal, because Section 45 of the Internal Revenue Code requires the LLCs to certify to the IRS that they sell refined coal with the "reasonable expectation" that it will be used in energy generation. Appx1878–79, Appx1888–89.

---

[4] Paragraph 11 of the 3AC names the Refined Coal LLCs; otherwise, the pleading is identical to the 2AC.

The district court dismissed Nalco's 3AC on October 15, 2015, holding that the 3AC "fails to cure the issues leading to the [1AC's] dismissal"—*i.e.*, that the "Chem-Mod Solution," as Nalco described it, differs from the '692 Patent both in terms of "when" and "how" it is performed. Appx2097. Once again, the court concluded that the amended pleading contradicted Nalco's claim of infringement:

> The [3AC] refers to a process flow diagram that shows the addition of MerSorb to the coal in three different locations . . . . In all three of those locations, the MerSorb and coal mixture is added to the process prior to coal combustion. Thus, the additives used in the Chem-Mod Solution are introduced prior to any interaction with coal combustion flue gas and are not "injected," as required by the elements of the [']692 Patent.

Appx2096.

The court also held that even if the 3AC did plead that the '692 Patent claims covered performance of the Chem-Mod Solution, the 3AC nonetheless "fails to allege that Defendants are responsible for both preparing the Chem-Mod Solution Mixture and injecting the treated coal into coal combustion flue gas." Appx2097. The court rejected Nalco's "direction and control" arguments, because not all steps could be attributed to a single party. Noting that the Section 45 tax credit is predicated on the sale of "refined coal to an unrelated person," the court stated: "Any argument that compliance with Section 45 of the tax code is evidence that Defendants direct and control the infringement of a patent in this case is unpersuasive and unconvincing." Appx2095. Therefore, "the [3AC] does not

support [the] allegations" that the Defendants "direct or control the actions of the coal-fired power plants." *Id.*

The court dismissed Nalco's claims for indirect infringement for additional reasons independent of the failure to state a claim for direct infringement. The induced infringement claim failed because Nalco "fails to plead intent to cause infringement," and the claim for contributory infringement failed because the 3AC "does not plead any facts to support Nalco's argument that MerSorb and S-Sorb have no substantial non-infringing uses." Appx2099–100.

The court again granted Nalco leave to re-plead, "if it can do so pursuant to Rule 11." Appx2100.

### C. The District Court Dismisses Nalco's Fourth Amended Complaint with Prejudice.

#### 1. Nalco's Fourth Amended Complaint.

Nalco filed its 4AC on November 16, 2015. *See* Appx2101–2358, Appx2359–2984. The new pleading includes the same material allegations that doomed Nalco's prior complaints. *Compare* Appx2116 (4AC) ¶¶ 26–27, *with* Appx1442–43 (3AC) ¶¶ 25–27. The 4AC also said the following:

> As explained in the '692 Patent, "coal combustion flue gas" is the gas that is created during the combustion of coal.

Appx2115 ¶ 21. The 4AC does not identify anything in the patent that "explain[s]"

that conclusion, plead any facts to support such claim scope, or acknowledge the more limiting statements that Nalco made during reexamination.

The 4AC added a third infringement theory that focuses on what happens after the refined coal is burned:

> Moreover, when a coal combustion furnace is operating, gases and other materials injected via coal injectors flow under pressure into areas of the coal combustion furnace beyond the areas of the furnace in which the coal component of the Chem-Mod Solution Mixture combusts and into additional areas of the furnace in which the coal combustion flue gas exists. Thus, this is an additional mechanism by which the MerSorb additive component of the Chem-Mod Solution Mixture is "injected into . . . coal combustion flue gas."

Appx2117–18 ¶ 31.

## 2. The District Court Dismisses the 4AC with Prejudice, for the Same Multiple Independent Reasons.

The Defendants moved to dismiss the 4AC with prejudice. Appx2989. In response, Nalco once again insisted that claim construction was required before dismissal, but offered no guidance to the district court regarding a possible construction. Nor did Nalco identify any new facts that it could allege to overcome the deficiencies identified in the motion to dismiss, proffer a proposed amended complaint, or cross-move to amend.

Nalco did raise the reexamination proceedings, telling the district court that "the [PTAB] found during the reexamination of the '692 Patent that the term 'coal

combustion flue gas' is not limited to gas in the 'flue.'" Appx3021. But Nalco did not inform the district court that Nalco had told the PTAB that "'flue gas' refers to combustion gases which reside in the 'flue'" and comprises, at most, gases in the area "from **above** the combustion zone" to the end of the smokestack. *See* Appx4816 (emphasis added).

The court dismissed Nalco's 4AC with prejudice on April 20, 2016, noting the similarities between the 4AC and the previously dismissed 3AC:

> As stated in the Memorandum and Order [dismissing the 3AC] dated October 15, 2015, the Chem-Mod Solution differs from the '692 Patent in both the **location** and **method** of application.

Appx6 (emphases added). In concluding that Nalco failed to state a claim for direct infringement, the court noted Nalco's failure to identify a plausible "injection" into the flue gas. *See* Appx6–7; *see also* Appx7 ("Nalco fails to provide support that all the steps or the equivalent claim limitations of the '692 Patent are performed. Particularly, the 'injection' of the bromide into flue gas.").

The court once again rejected Nalco's argument that the Defendants could be liable for the actions of unnamed power plant operators who actually burn the refined coal, finding that Nalco had not alleged any facts to support a finding that any of the Defendants direct or control the coal-fired power plants or their operators, or that any Defendant formed a joint enterprise with them. Appx8–9. As before, the court

dismissed Nalco's claims for indirect infringement for multiple independent reasons. Appx10.

This time, the court dismissed Nalco's complaint with prejudice, finding that "Nalco was provided several opportunities to re-plead its allegations but has failed to plead a plausible case of patent infringement." *Id.*

### D. The District Court Denies Nalco's Rule 59(e) Motion for Reconsideration.

On May 18, 2016, Nalco moved the district court to reconsider one aspect of its decision dismissing the 4AC—namely, that the dismissal was with prejudice. Nalco proffered in support of its motion more than 2,300 pages of previously unsubmitted material, including the entire file history of the '692 Patent, an inventor declaration, two declarations by Nalco employees asserted to be "experts," another "expert" declaration, and eight additional references. *See* Appx3068–5437. Nalco argued that this newly presented material would support an unidentified claim construction that Nalco apparently seeks. *See* Appx3074–75. All of the newly submitted material was available to Nalco before it filed its original complaint, but Nalco did not incorporate it into any of its pleadings; present it in opposition to the motion to dismiss the 4AC; or use it as a basis for a motion to amend. Nor did Nalco proffer any amended complaint.

The court remarked on these stark omissions:

Nalco offers no explanation as to why so much evidence, which it claims has been in its possession, was not previously incorporated into one version of its prior pleadings.

Appx17. In denying Nalco's motion for reconsideration, the court stated:

Nalco's Motion fails to cite to the standard for Rule 59(e), and Nalco makes no argument in the Motion that it has met the standard such that a Motion to Reconsider would be appropriate.

Appx15. The court recognized that Nalco "used this Motion to assert allegations it could have alleged in one of its previously filed pleadings" and "to advance arguments in support of its Response to Defendants' Motion to Dismiss—a dispositive motion that has already been granted." Appx16.

The court also specifically held that "dismissal of the 4AC with prejudice was appropriate," because "Nalco failed to plead its patent infringement claims in the 4AC, despite having been provided several opportunities to re-plead its allegations." Appx17 (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007)).

## SUMMARY OF ARGUMENT

The 4AC fails to state a claim because it does not (i) plausibly allege that the accused method infringes or (ii) allege that any named Defendant performs the accused method. The 4AC was properly dismissed with prejudice because these defects persisted through two prior dismissal opinions and a total of five complaints.

On appeal, Nalco attacks only the first basis for dismissal, but fails to account for the district court's correct conclusion that the 4AC pleads facts that belie any assertion that the accused methods plausibly involve injecting bromide into flue gas. Without construing the '692 Patent, the district court concluded that the broadest possible construction could not encompass mixing MerSorb with cold coal or feeding that coal into a furnace.

Nalco does not dispute the court's second holding that no Defendant is responsible for performing the allegedly infringing act of burning coal. But even if Nalco had not waived that argument on appeal, it would still fail because the relationship alleged between the Defendants that sell refined coal to unrelated (and unnamed) power plants is not one of contract, joint enterprise, or other obligation for which any Defendant could be held responsible for a power plant's actions.

Stating a plausible case for infringement and the existence of a direct infringer responsible for performing the accused method is a pleading requirement for *any* claim under section 271 of the Patent Act. Nalco's failure to satisfy these elements means that the Court should affirm the judgment dismissing the 4AC, including the indirect and willful infringement claims. The district court concluded that those claims also fail for other independent reasons; Nalco's appeal does not argue that the district court erred in so concluding.

The district court was within its discretion to dismiss the 4AC with prejudice. Nalco had every opportunity to plead its case but still—after five attempts—failed to plead facts supporting a link among the accused method, the claims of its patent, and the named Defendants. Dismissal with prejudice was proper.

Likewise, the district court was within its discretion to deny reconsideration of its decision dismissing the 4AC with prejudice. Nalco failed to meet the standard for reconsideration by failing to identify any allegations or legal standards overlooked by the court, and by offering nothing more than preexisting information it chose not to plead in any of its previous complaints.

## STANDARD OF REVIEW

The district court's judgment was rendered under Rules 12(b)(6) and 59(e), and this appeal presents no patent-specific issues. Thus the Supreme Court and the Seventh Circuit are the principal sources of case authority. *See In re Bill of Lading Trans. & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). Although the Rule 12(b)(6) dismissal is reviewed *de novo* (*Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013)), the parties agree that the determinations to dismiss the 4AC with prejudice and to deny reconsideration are committed to the district court's discretion and are reviewed here under a deferential standard. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013).

# ARGUMENT

## I. THE 4AC DOES NOT STATE A CLAIM FOR DIRECT INFRINGEMENT.

### A. The 4AC's Allegations About the Chem-Mod Solution Belie a Claim of Direct Infringement.

Like the 1AC and 3AC, the 4AC describes the performance of the accused Chem-Mod Solution through a combination of narrative statements, schematics, and illustrations reproduced from Chem-Mod's own documents. Accepting these allegations as true, the district court correctly held that the claims of the '692 Patent cannot plausibly cover that process. Appx2–10. Under Seventh Circuit law, a complaint that pleads its way out of liability must be dismissed under Rule 12(b)(6). *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). In another decision cited by Nalco, *Orthmann v. Apple River Campground, Inc.*, the court could have been talking about Nalco:

> Of course, if, as is increasingly common, the plaintiff pleads his case in detail (to "educate" the judge or nudge the defendant toward settlement), he may find himself pleading facts that show, as a sparser complaint might not have done, that he has no cause of action—and then he is out of luck; he has set himself up for a Rule 12(b)(6) motion.

757 F.2d 909, 915 (7th Cir. 1985) (citation omitted); *see also Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a

defense." (citation omitted)).  This Court has held the same.  *See In re Bill of Lading Trans. & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (dismissing claim where plaintiff "supplie[d] the very facts which defeat its claims").

The 4AC pleads three theories of how use of the Chem-Mod Solution could involve "injecting a bromide compound that is a thermolabile molecular bromine precursor into [coal combustion] flue gas."  Based on the 4AC itself, none of these acts could plausibly be covered by even the broadest possible construction of the patent claims.

*Theory 1*:  Nalco pleads that the preparation of "refined coal" by mixing MerSorb with cold coal constitutes "injection."  *See* Appx2115 (4AC) ¶ 22.  On appeal, Nalco makes the astonishing assertion that it "never alleged" that the preparation of refined coal "is a step that satisfies the claims."  Br. 38.  Nalco's complaints—and the district court's decisions—belie this assertion.  *See, e.g.*, Appx65 (1AC) ¶ 17; Appx495 (1AC Dismissal Opinion); Appx4 (4AC Dismissal Opinion).

Nalco larded all of its complaints with materials that contradicted this theory.  Multiple diagrams reproduced in and annexed to the 4AC show that refined coal is prepared well before it is introduced into the furnace—let alone the flue.  *See, e.g.*, Appx2116 ¶ 27 (showing all MerSorb mixing points preceding the furnace).  The 4AC exhibits even characterize the coal pre-treatment process used in the Chem-

24

Mod Solution as "an alternative" to methods that reduce emissions by injecting chemicals "into the exhaust pipes of a coal furnace."  Appx2528.

Nalco cannot disavow the allegations of its complaint.  Indeed, in *Bogie* the Seventh Circuit rejected the exact type of "double-talk" that Nalco attempts here:

> When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the nonmoving party. . . .  [A] plaintiff whose case relies on contradicting such an attachment needs to explain her position.

705 F.3d at 609.  The district court here correctly decided that like its predecessors, the 4AC also compels the conclusion that "the Chem-Mod Solution differs from the '692 Patent in both the location and method of application."  Appx6.

*Theory 2*:  Nalco pleads that "injection" occurs when refined coal is fed into the furnace for combustion, where it immediately encounters the purportedly ubiquitous "coal combustion flue gas."  Appx2116 ¶ 27 ("The Chem-Mod Solution Mixture is then injected into coal combustion flue gas.").  That theory, pleaded in conclusory terms, is also contradicted by the record Nalco made.

As Nalco told the PTAB, "flue gas" is combustion gas that "*reside[s] in the 'flue'*"—the region of a coal combustor *from above the combustion zone* through the particulate collection system."  Appx4816 (emphases added).  Even when given its broadest reasonable construction, the term "flue gas" does not encompass the coal

combustion gas in the "combustion zone" of the lower furnace, where the "coal injectors" are alleged to be located.  Appx2116 ¶ 27.  Nalco tries to backpedal from this by focusing on the PTAB's statement that the claims "are silent as to either temperature or location of treatment of the flue gas," but the silence on temperature is irrelevant, and the putative silence on "location of treatment of the flue gas" ignores the requirement that the gas to be treated be "flue gas," which, according to Nalco itself, must "reside in the 'flue'—the region of a coal combustor from above the combustion zone through the particulate collection system."  Appx4816.

In requiring injection of bromide compounds into flue gas, the claims do not plausibly cover feeding "refined coal" into a furnace.  Nalco's conclusory assertion that the patent "explain[s]" otherwise—*i.e.*, that flue gas is actually everywhere, Nalco's statement to the PTAB notwithstanding—is unavailing.  *See* Appx2115 (4AC) ¶ 21.  The patent neither says nor "explains" any such thing.  Nor does the patent characterize the introduction of chemicals into a furnace along with coal as a type of "injection" into "flue gas"—let alone claim that as an embodiment. Challenged by that stark fact and boxed in by the prior proceedings, Nalco came up empty-handed in five pleadings.  Absent any fact allegations that could support such a construction, Nalco resorted to a legal conclusion equating all coal combustion gas with "flue gas."  But such legal conclusions are "disentitle[d] . . . to the presumption of truth."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Teva Pharm. USA, Inc.*

*v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) ("ultimate interpretation" of patent claim term "is a legal conclusion").

Nalco cites *Firestone Financial Corp. v. Meyer*, 796 F.3d 822 (7th Cir. 2015), for the proposition that paragraph 21 of its 4AC must be presumed true (Br. 40–41), but that reliance is misplaced. In *Firestone*, the district court disregarded allegations that "Firestone committed orally to provide a half million dollars unsecured . . . ." *Id.* at 827. The Seventh Circuit reversed the dismissal, underscoring that the plaintiff's ***plainly factual allegations*** were entitled to the presumption of truth because they were "neither legal assertions nor conclusory statements reciting the elements of a cause of action." *Id.* (citing *Iqbal*, 556 U.S. at 678). Here, Nalco accuses a method that is outside the "broadest possible construction," yet fails in the 4AC to plead any factual support for the conclusory statement in paragraph 21.

***Theory 3***: Nalco alternatively pleads that "injection" could occur when some "bromide compound that is a thermolabile molecular bromine precursor" flows "under pressure" through the areas of the furnace where combustion occurs until it reaches actual "flue gas." Appx2117–18 ¶ 31. This theory vitiates the claim requirement that the compound to be injected into flue gas must itself be "thermolabile." *See* Appx27–28. Nalco conceded during the reexamination and also agrees here that "thermolabile" means "unstable when heated." *See Alstom Power*, 2013 WL 6681601, at *5; Br. 10. It is implausible that a chemical compound that is

"unstable when heated" could survive a trip through the extreme heat of the combustion areas of a furnace and remain a "thermolabile molecular bromine precursor" upon reaching the flue gas, as the claim requires.

The district court dismissed all three theories, concluding that "Nalco fail[ed] to provide support that all the steps or the equivalent claim limitations of the '692 Patent are performed. Particularly, the 'injection' of the bromide into flue gas." Appx7. In dismissing the 4AC, the district court gave Nalco the benefit of every doubt, but correctly concluded that both the preparation of refined coal and the combustion of refined coal, as described in the pleadings, are insurmountably different from the process claimed in the patent. Appx6 ("accepting all well pled allegations as true"); *see also Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (in the absence of supporting facts, courts need not draw unwarranted inferences that defy either "judicial experience" or "common sense" (quoting *Iqbal*, 556 U.S. at 679)). Having chosen to file thousands of pages of pleadings comparing the Chem-Mod Solution to the manifestly different '692 Patent, Nalco should not be surprised that it pled itself out of court.

## B. The Dismissal Was Procedurally Proper.

In addition to arguing that the 4AC states a plausible claim for direct infringement, Nalco contends that dismissal was improper because: (i) the court should have conducted a full-blown *Markman* hearing, or at least construed the

claims, before dismissing the 4AC; (ii) the "broadest reasonable construction" that the court used was incorrect; (iii) the court should have considered materials submitted on reconsideration to fill in any blanks in Nalco's 4AC; (iv) the 4AC was sufficient because it provided "notice" of Nalco's claims for relief; and (v) the 4AC was sufficient because it complied with Form 18 of the appendix to the Federal Rules. Each contention is without merit.

### 1. The District Court Did Not Need to, and Did Not, Construe the Claims.

Nalco tried three times to avoid dismissal by arguing that the district court must perform a formal claim construction before deciding any Rule 12(b)(6) motion. Requiring claim construction, as Nalco advocates, would give patent infringement plaintiffs a free pass on pleading infringement claims, insulating them from Rule 12(b)(6) motions. *See, e.g.*, *Lyda v. CBS, Inc.*, 838 F.3d 1331, 1340–41 & n.4 (Fed. Cir. 2016) (dismissing amended complaint prior to claim construction under Rule 12(b)(6)). "Claim construction is not an inviolable prerequisite" to dismissal under Rule 12(b)(6). *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) (citation omitted), *cert. denied*, 137 S. Ct. 242 (2016).

The sufficiency of the 4AC depends on whether the accused process could plausibly infringe the asserted patent under even the "broadest possible construction" of the claims. *See Bill of Lading*, 681 F.3d at 1343 n.13 (citing *Twombly* and *Iqbal* and reviewing sufficiency of complaint in light of "broadest

possible construction"). That inquiry, which echoes the "broadest reasonable interpretation" standard properly applied by the PTAB during the '692 Patent reexamination, is precisely the analysis that Nalco sought in the court below. *See* Appx3020 ("Because claim construction is inappropriate at the motion to dismiss stage, courts must 'afford the claims their ***broadest possible construction***.'" (emphasis added) (quoting *Bill of Lading*, 681 F.3d at 1343 n.13)); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–45 (2016) (discussing "broadest reasonable construction" standard). And it is precisely the analysis that the district court did, citing *Bill of Lading*. *See* Appx7.

Resolution of the actual scope of Nalco's claims was neither required, nor requested, nor provided by the court. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[C]laim construction is a matter of resolution of ***disputed*** meanings and technical scope, to clarify and ***when necessary*** to explain what the patentee covered by the claims, for use in the determination of infringement." (emphases added) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997))). Here, the court agreed that Nalco's claims should be given their "broadest possible construction," and found that infringement was nonetheless implausible. *Cf. Bill of Lading*, 681 F.3d at 1339 ("[F]ormal claim construction is not required to reach the conclusion that . . . Appellees' products can be used for non-infringing purposes.").

Nalco argues, alternatively, that the district court *did* construe the claims. The court repeatedly stated, however, that the dismissal was based on the rules of pleading and that it did not construe the claims. *See* Appx7; Appx2097; Appx495. No claim construction appears in any of the three district court dismissal opinions.

Because the court did not construe the claims, Nalco's related argument that the court erred by doing so without first developing a complete record is wrong.

> 2.     **The District Court Appropriately Used the "Broadest Possible Construction" to Evaluate the Sufficiency of the Infringement Claims.**

Nalco contends further that the court did not consider the "broadest possible construction" of the asserted patent claims because the court "implicit[ly]" limited "coal combustion flue gas" to "a particular region of the power plant downstream of the combustion zone," supposedly narrowing the claim scope to a putative "preferred embodiment." Br. 22–24. To support its argument, Nalco quotes language from its patent:

> According to the invention, there is provided a method of treating coal combustion flue gas, *preferably* that obtained *after* the "superheater" section of a coal-fired plant. . . .

Br. 24 (quoting Appx21) (emphases added). Neither the Defendants—nor any of the district court decisions—so narrowed the definition of "flue gas" to flue gas "obtained after the 'superheater' section" of a power plant.

Nalco's statement to the PTAB recognized that coal combustion flue gas is not coextensive with all coal combustion gas, and the district court gave Nalco the broadest possible construction of "flue gas" consistent with Nalco's statements. A narrower interpretation, which excludes gas in the upper furnace before the superheater, may indeed be the proper construction of the claim. But regardless, all of the constructions that are ***plausible*** limit "flue gas" to gases after the combustion zone. Nalco admitted as much during reexamination. It had to, in order to avoid ignoring the word "flue" and converting the claim element "coal combustion flue gas" into "coal combustion gas."

Because there is no plausible claim construction that would permit Nalco to state an infringement claim, Nalco was never entitled to get to claim construction; the case was properly dismissed at the pleading stage.

### 3. Nalco Cannot Rely on Materials Submitted After Dismissal to Save the 4AC.

Nalco argued that the district court should have determined whether Nalco could possibly state a claim by considering thousands of pages of "intrinsic and extrinsic evidence" that were never presented to the district court on the motion to dismiss, but presented for the first time in connection with Nalco's motion for reconsideration—after the court issued its third dismissal decision identifying shortcomings in Nalco's pleadings. Those materials properly played no part in the district court's consideration of the sufficiency of the 4AC because they were not

part of the record at the time. Nalco's reconsideration motion did not even argue that the court should have considered such evidence in ruling on the sufficiency of the 4AC.

Now, on appeal, Nalco goes one step further and suggests that the evaluation of whether the 4AC actually states a claim should be conducted using the material submitted for the first time on reconsideration as well as additional materials submitted for the first time on appeal. Br. 57 n.18. Nalco relies on *Orthmann* and its progeny for its position that it should be able to show **this** Court that the **4AC** states a claim. *Id.* But that line of cases does not help Nalco, because Nalco's complaints repeatedly failed to plead facts to support inferences necessary for a finding of infringement—a threshold that must be met before non-record material may be introduced to "elaborate" on allegations. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 n.1 (7th Cir. 2015) ("A party opposing [a motion to dismiss] is free to elaborate upon the **facts** in a brief." (emphasis added)).

Here, Nalco suggests that it could propound an entirely new slate of fact allegations to create an alternative path to relief not supported by allegations in the complaint. *See* Appx2115 (4AC) ¶ 21 (Nalco's unsupported and contradictory legal conclusion that "flue gas" comprises all combustion emissions). But "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Thomason v.*

*Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (refusing to consider "a case that was not before the district court" where the plaintiff declined to amend to add the allegations supporting its new theory); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347–48 (7th Cir. 2012) (rejecting new allegations offered on appeal where "plaintiffs actually took advantage of their ability to amend their complaint" in other respects but did not plead any new facts covering issue in dispute); *Ahr v. Commonwealth Edison Co.*, No. 03 C 6645, 2005 WL 6115023, at *8 (N.D. Ill. Feb. 24, 2005) (rejecting "multiple affidavits" attached to plaintiffs' dismissal opposition, "which contain an entire body of facts . . . to be incorporated into their complaint"), *cause dismissed*, No. 05-2370, 2006 WL 5545848 (7th Cir. Dec. 22, 2006).

None of the plaintiffs in Nalco's cited cases were permitted a back-door amendment on appeal. Rather, in each of Nalco's cases, plaintiffs' proffers elaborated on fact allegations in the complaint and were consistent with those facts. *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 77, 79–80 (7th Cir. 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 438–40 (7th Cir. 1994); *Orthmann*, 757 F.2d at 915. None of the proffers required the Seventh Circuit to draw inferences that **contradicted** the language of an incorporated document or the public record of prior proceedings.

Nalco's late submission is particularly inappropriate because the materials that it proffers actually contradict the record. Nalco has submitted information that

is inconsistent with the '692 Patent (Appx19–28) and its reexamination history, which is integral to the complaint (*see* Appx2113 (4AC) ¶ 16). Nalco's proffer is an attempt to remove the very claim limitations (*e.g.*, "***flue*** gas") that Nalco explained during the reexamination.

Nalco cannot undo the record delimiting its patent franchise any more than a plaintiff can undo an allegation demonstrating a clear time bar. This runs afoul of the Seventh Circuit's holding in *Highsmith*, that "when reviewing Rule 12(b)(6) motions," the appellate court "will consider new factual allegations raised for the first time on appeal ***provided they are consistent with the complaint***." 18 F.3d at 439–40 (emphasis added) (citations omitted); *see also Orthmann*, 757 F.2d at 915 ("Orthmann was free on this appeal to give us an unsubstantiated version of the events of July 19, 1980—provided it was not inconsistent with the allegations of the complaint . . . ."); *but see Early*, 959 F.2d at 79 ("Of course a plaintiff can plead himself out of court. . . . If he alleges facts that show he isn't entitled to a judgment, he's out of luck." (citations omitted)).

### 4. Nalco's "Notice" Argument Is a Red Herring, Because Lack of Notice Is Not the Problem.

Next, Nalco contends that its 4AC was "sufficient" as a matter of law because it provided notice of its claim for infringement under Rule 8(a). Br. 39–40; Br. 44. But that misses the point. As this Court noted when evaluating a complaint under the old Form 18, "[t]he touchstones of an appropriate analysis under Form 18 are

notice *and* facial plausibility." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (emphasis added) (citations omitted). And as explained above, dismissal is warranted under Rule 12(b)(6) because the 4AC does not state a plausible claim for relief. *See id.* at 1284 ("[W]e think it clear that an implausible claim for patent infringement rightly should be dismissed."). Nalco's "notice" argument based on Rule 8(a) is a red herring.

### 5. Nalco's Assertion That the 4AC Complied with Form 18 Is Irrelevant and False.

Finally, Nalco asserts that the 4AC satisfied Form 18, and therefore must survive the Defendants' motion to dismiss as a matter of law. Not so.

First, Form 18 has been abrogated and does not apply to the 4AC. The abrogation applies to all cases commenced after December 1, 2015, "***and***, insofar as just and practicable, all proceedings then pending." *Lyda*, 838 F.3d at 1337 n.2 (emphasis added) (citation omitted) (applying Form 18 because case was terminated in court below prior to abrogation). Nalco had argued against dismissal of the 1AC and 3AC on the basis of Form 18's safe harbor, but abandoned that position in opposing dismissal of the 4AC.

That abandonment was warranted. Nalco served its 4AC on November 16, 2015, just two weeks before the effective date of the abrogation. Nalco filed its opposition to the Defendants' motion to dismiss on January 27, 2016 (Appx2101–61), and the 4AC was dismissed on April 20, 2016, more than four months after the

rule changes took effect (Appx1). Under the circumstances, applying the abrogation is "just and practicable."

Second, even assuming Form 18 applies, it would not save Nalco because Nalco pled itself out of court. Pleading the facts required by a Form does not protect a complaint such as the 4AC, where the plaintiff pleads additional allegations that belie the claim for relief. *See*, *e.g.*, *Trevino v. Union Pac. R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990) (stating, in context of a Form for negligence pleading, that "a plaintiff can plead himself out of court by unnecessarily alleging facts which, all unwittingly on his part, demonstrate that he has no legal claim."). Nalco's contention that only "a few district court cases" stand for the proposition that a plaintiff's own allegations can plead the party out of court (Br. 47) ignores the Seventh Circuit cases cited in Nalco's own brief, as well as the overwhelming similarity between Nalco's situation and those very "district court cases" that it cites. *See* Br. 54 (citing *Barry Aviation*); Br. 57 n.18 (citing *Orthmann*, *Early*, and *Highsmith*); Br. 48 (citing two district court cases in which the allegations of infringement were "contradicted" by the pleading).

## II. DISMISSAL IS ALSO WARRANTED BECAUSE THE 4AC FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT AGAINST ANY NAMED DEFENDANT.

The 4AC also fails because it does not state a claim that any individual named Defendant is responsible for performing the accused process. As explained below,

Nalco has waived its challenge to the district court's conclusion that this failure constitutes a second, independent basis for dismissing the 4AC. In addition, even apart from the waiver, this deficiency warrants dismissal of the 4AC.

A. **Nalco Waived Its Challenge to the District Court's Dismissal Based on the 4AC's Failure to Allege that Any Individual Defendant Directly Infringes the Patent.**

Two of Nalco's infringement theories—that "injection" occurs when refined coal is added to a combustion furnace, and again when a "thermolabile" molecular precursor reaches the flue gas—are predicated on the burning of refined coal. But the 4AC does not allege that *any* individual named Defendant burns such refined coal in commercial power plants, or is responsible for doing so, either through "direction or control" of, or by "joint enterprise" with, the unnamed plant operators who burn that coal. The district court squarely held that this pleading omission formed a second basis for its dismissal decision. Appx9 (dismissing 4AC for additional reason that "Nalco's claim that Chem-Mod" or other Defendants "direct[] and control[] the power plants is unsupported by the factual allegations of the 4AC"). Nalco has not challenged that determination. Accordingly, Nalco has waived its argument that the 4AC states a claim based on the burning of coal in commercial power plants. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Nalco's brief thoroughly ignores this independent basis for the district court's dismissal, touching on the general question of who can be liable for the alleged acts of infringement only in a glancing footnote reference:

> Nalco certainly pled in the 4AC that Chem-Mod's direct control and direction carrying out the process in the University of North Dakota facility constituted literal infringement. And, with respect to this activity, Chem-Mod has not denied that the 4AC adequately pled an act of infringement, with the sole exception of the claim scope issue.

Br. 51 n.15 (citations omitted). Nalco's naked statement that it "certainly pled" that one Defendant (out of 25) is liable because of experimental testing does not preserve its argument even as to such "testing," however, because "arguments raised in footnotes are not preserved." *SmithKline Beecham*, 439 F.3d at 1320; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 20 n.5 (Fed. Cir. 2012) (disregarding alternative noninfringement argument raised only in footnote); *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1294 (Fed. Cir. 2012) (disregarding argument, raised only in footnote, that reference did not qualify as prior art); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1226 (Fed. Cir. 2006) (disregarding alternative damages enhancement argument raised only in footnote).

Elevating that statement to the body of Nalco's brief would not have saved the argument against even Chem-Mod; the "certainly pled" statement is "nothing more than an assertion," too "skeletal" to preserve an argument. *See SmithKline*

*Beecham*, 439 F.3d at 1320 (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see also Ajinomoto Co. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1278 (Fed. Cir. 2010) (single-sentence challenge in body of brief, "unaccompanied by developed argumentation[,] does not preserve the issue for appeal" (citation omitted)).

## B. The 4AC Does Not Plead That Any Named Defendant Performs, or Is Responsible for Performing, the Alleged Acts of Infringement.

"[A] method patent is not directly infringed . . . unless a single actor can be held responsible for the performance of all steps of the patent." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2119 (2014). Because Nalco's 4AC does not support such an inference against any named Defendant, dismissal of the direct infringement claims was proper.

### 1. The 4AC Does Not Plead That Any Defendant Burns the Refined Coal.

Two of Nalco's infringement theories assert that burning refined coal is the act covered by its patent claims—either because feeding refined coal into the furnace constitutes "injection," or because some putative thermolabile molecular halogen precursor travels unscathed through the furnace until it reaches a flue. But the 4AC does not plead that any Defendant actually operates a commercial power plant—*i.e.*, that any Defendant either feeds coal into the furnace or otherwise burns the coal.

Instead, the 4AC merely alleges that "the [refined coal-making] plants operated by the Refined Coal LLCs . . . ***supply*** the Chem-Mod Solution Mixture for injection into coal combustion flue gas." Appx2123 ¶ 52 (emphasis added). That, however, pleads nothing more than a product sale. *See infra*, Section II.C. Because no single Defendant is alleged to be "responsible for the performance of all steps of the patent," the direct infringement claims against the Defendants fail. *See Limelight*, 134 S. Ct. at 2119.

## 2. The 4AC Does Not Plead That Any Named Defendant Is Responsible for Burning the Refined Coal.

Just as the 4AC does not plead that any Defendant performs the allegedly infringing acts, it does not plead that any Defendant is responsible for the performance of such acts by others.

To state a claim against a defendant that does not itself perform the allegedly infringing acts, the complaint must plead that the defendant:

(a) "acts through an agent (applying traditional agency principles)";

(b) "contracts with another to perform one or more steps of a claimed method";

(c) "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance"; or

(d) "form[s] a joint enterprise" with the actor(s) performing the missing steps of the method.

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (*en banc*) (citations omitted). The pleading standards of *Twombly* and *Iqbal* apply to such allegations. *Lyda*, 838 F.3d at 1339.

With respect to categories (a) and (b), the 4AC does not allege a principal-agent relationship or that any Defendant hires power plant operators to burn coal. The sole relationship that the 4AC does allege is a commercial arrangement where refined coal is "sold by the taxpayer to an ***unrelated person*** during the taxable year," "with the reasonable expectation that it will be used for [the] purpose of producing steam." *See* 26 U.S.C. § 45(a)(2), § 45(c)(7)(A)(i) (emphasis added); Appx2123 (4AC) ¶ 55 ("In order to qualify for Section 45 Tax Credits, the Refined Coal LLCs must sell the Chem-Mod Solution Mixture . . . .").

Nalco's allegations with respect to category (c) are simply boilerplate clipped from this Court's decisions in *Akamai*. *See, e.g.*, Appx2130 ¶ 79 ("The Refined Coal LLCs condition the participation of the operators of the coal-fired power plants in the Section 45 Tax Credits program, and/or conditions the receipt of a benefit by the operators of the coal-fired power plants, on the use of the Chem-Mod Solution."). Such conclusory allegations are "disentitle[d] . . . to the presumption of truth" and cannot forestall dismissal. *See Iqbal*, 556 U.S. at 681. The sale of refined coal to "unrelated" power plants, with the latter under no obligation to the Defendants for continued purchase or for any particular performance, cannot support a finding that

any Defendant exercises "direction or control" over the "manner and timing" of coal combustion. The 4AC actually disclaims that any Defendant has the right to compel the use of refined coal. *See, e.g.*, Appx2415 (Ex. E) ("If utilities stop burning coal, it is anticipated that our existing partners [investors] will want to move the Section 45 clean coal production plant to a different utility . . . .").

Regarding category (d), pleading that the Defendants operate under the framework of Section 45 of the Internal Revenue Code cannot state a claim for a joint enterprise. *See* Appx2132 ¶ 84 (asserting the existence of a joint venture having the "common purpose . . . to obtain Section 45 Tax Credits by selling the Chem-Mod Solution Mixture for use in the Chem-Mod Solution"). A joint enterprise requires:

> (1)  an agreement, express or implied, among the members of the group;
>
> (2)  a common purpose to be carried out by the group;
>
> (3)  a community of pecuniary interest in that purpose, among the members; and
>
> (4)  an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Akamai*, 797 F.3d at 1023 (citing Restatement (2d) of Torts § 491 cmt. c (1965)).

For the same reasons stated above, the 4AC fails to plead the elements of a joint enterprise. It does not plead that the Defendants and power plant operators had a common purpose in the burning of refined coal (the allegedly infringing activity).

Nor does it plead that they had joint control over the burning of refined coal. Nor does it allege that any power plant operator has a contract with any Defendant requiring the plant to burn refined coal; to the contrary, the decision whether to burn refined coal (like the decision whether to buy refined coal) lies in each plant operator's sole discretion. *See* Appx2132–33 (4AC) ¶ 85; Appx2415 (4AC, Ex. E). Likewise, with respect to the collection of tax credits, there is no allegation that coal-fired plant operators exercise any "right of control" over the Refined Coal LLCs' collection of tax credits or share in those credits.

>   **C.      The 4AC Fails to State a Direct Infringement Claim Based on Sales of Refined Coal, the Chemicals Used to Prepare Refined Coal, or the Chem-Mod Solution Itself.**

Finally, Nalco cannot base a direct infringement claim on: (i) arm's-length sales of refined coal to power plants; (ii) sales of the sorbents used to prepare refined coal; or (iii) putative sales of the "Chem-Mod Solution."

***Sales of Refined Coal or the Sorbents***:  All of the claims of the '692 Patent are directed to methods of treating flue gas. The sale of materials used to perform a patented method cannot constitute direct infringement of a patented method. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."). Accordingly, allegations that the Defendants directly infringe because they sell refined coal fail as a matter of law.

*See, e.g.*, Appx2141 ¶ 113. Likewise, there can be no claim that the sale of the sorbents used in the Chem-Mod Solution can constitute direct infringement.

**_Sales of the "Chem-Mod Solution"_:**   Any allegations that the Defendants directly infringe because they "sell" the Chem-Mod Solution itself also fail as a matter of law.  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention[ ] within the United States . . . infringes the patent."  When the patented invention is a method, however, only "use" of the method is possible, and only use can constitute direct infringement.  *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319–20 (Fed. Cir. 2005) (discussing legislative history).  "[A] method patent is not directly infringed . . . unless a single actor can be held responsible for the ***performance*** of all steps of the patent." *Limelight*, 134 S. Ct. at 2119 (emphasis added); *see also Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("Where . . . the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent." (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010))).  This Court has never held that direct infringement of a method claim can be found under the "sells" or "offers to sell" prongs of section 271(a).  *See generally Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*, No. 3:11-cv-2214, 2014 WL 2531973, at *2–4 (S.D. Cal. June 4, 2014).

A performance of steps cannot be conveyed to another party; it can only be fully executed (put in "use") or remain unperformed and therefore noninfringing. As this Court explained in *NTP*, 418 F.3d at 1319, the performance of a method is not "a thing capable of being transferred." If the method is performed by the seller for the benefit of another, the seller is "using" the method and liable under section 271(a) for that reason alone. If the seller provides instructions for how to perform the method, or licenses the method to another, that also is not ***direct*** infringement.

Because the '692 Patent claims only methods, Nalco cannot maintain direct infringement claims based on anything other than the ***acts*** it accuses of infringement: preparing refined coal, feeding refined coal into the furnace, or otherwise burning refined coal.

### III. THE 4AC DOES NOT STATE A CLAIM FOR INDIRECT OR WILLFUL INFRINGEMENT.

#### A. There Can Be No Indirect or Willful Infringement Absent Direct Infringement.

As explained above, Nalco's serial complaints failed to state a claim for direct infringement based on the use of the Chem-Mod Solution, and failed for the additional reason that they did not allege that any of the named Defendants could be held liable as a direct infringer. Because direct infringement is a required predicate to claims of indirect or willful infringement, a complaint that fails to state a plausible

case for direct infringement also cannot support a claim for indirect or willful infringement. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697 (Fed. Cir. 2008) (inducement); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (contributory infringement); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005–06 (Fed. Cir. 2012) (willful infringement). Accordingly, those claims were correctly dismissed.

### B. Nalco Does Not Challenge the District Court's Dismissal of the 4AC's Indirect Infringement Claims Based on the 4AC's Failure to Plead Other Elements of Those Claims.

The district court separately considered Nalco's indirect infringement claims and correctly found them deficient. Moreover, Nalco has waived any challenge, compelling affirmance.

*__Intent__*: A complaint for inducement or contributory infringement must plead intent to cause infringement, because intent is an element of both claims. *Superior Indus., LLC v. Thor Global Enters.*, 700 F.3d 1287, 1295–96 (Fed. Cir. 2012) (inducement requires intent to cause infringement); *Bill of Lading*, 681 F.3d at 1337 (contributory infringement requires sale or offer to sell material "***known by the party*** 'to be especially made or especially adapted for use in an infringement of such patent'" (emphasis added) (quoting 35 U.S.C. § 271(c))). The district court dismissed the indirect infringement claims because "Nalco has not sufficiently pled

a claim for direct infringement *or intent to cause infringement*." Appx10 (emphasis added).

Nalco's throwaway footnote, observing that the district court "may also have based its decision on a conclusion that Nalco failed to plead 'intent'" (Br. 60 n.20), contains no argument. Nalco has thus waived any challenge on appeal. *See SmithKline Beecham*, 439 F.3d at 1319–20; *see also supra*, Section II.A.

Regardless of Nalco's waiver, the 4AC fails to plead intent. *See* Appx2140–41 ¶ 109 (alleging only knowledge of the patent; Nalco's demand for royalties; the Alstom suit; and the original complaint against Chem-Mod); *cf. Superior Indus.*, 700 F.3d at 1295–96 (notice of "claim of infringement" insufficient). Nalco argues on appeal that "Chem-Mod is a company created for the express purpose of facilitating the use by coal-fired power plants of the Nalco mercury-removal process" (Br. 5), but nothing in the 4AC "support[s] a reasonable inference" that the Defendants "specifically intended" to cause infringement (*Superior Indus.*, 700 F.3d at 1296). There is no reference anywhere in the plethora of exhibits to "treating coal combustion flue gas" via "flue gas" "injection," and the remainder of the 4AC's allegations actually contradict any intent to cause infringement of the patent claims. *See, e.g.*, Appx2425 (4AC, Ex. E) (describing Chem-Mod's methods as "an alternative" to "injection" methods).

***No Substantial Noninfringing Use***:    To be liable for contributory infringement under section 271(c), a defendant must sell to one practicing a patented process a material that has "no substantial noninfringing use."  The district court dismissed the contributory infringement claims in the 3AC for the additional reason that Nalco failed to plead that MerSorb and S-Sorb—the materials allegedly sold for use in practicing the Chem-Mod Solution—have "no substantial non-infringing use." *See* Appx2100.

The district court correctly recognized that Nalco's pleading that the chemicals lack noninfringing uses "***[a]s sold and delivered*** to the Refined Coal LLCs or operators of coal-fired power plants ***using the Chem-Mod Solution***" does not meet the statutory requirement.  *Id.*; Appx1448 (3AC) ¶ 49 (emphases added). Nalco parroted back the same insufficient allegations in the 4AC.  *Compare* Appx1448 (3AC) ¶ 49, *with* Appx1449–51 (4AC) ¶ 53.

This Court has held this type of "artful" pleading insufficient as a matter of law.  *See Bill of Lading*, 681 F.3d at 1337–38 (dismissing allegation that software lacked noninfringing uses "as customized").  In *Bill of Lading*, as in the 3AC and 4AC, the allegations were "tailored too narrowly; they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'"  *Id.* at 1338.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING THE 4AC "WITH PREJUDICE."

No plaintiff has a right to re-plead *ad infinitum*. Rule 15(a)(2) provides for leave to amend only "when justice so requires." Fed. R. Civ. P. 15(a)(2). And this decision is squarely committed to the district court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("repeated failure to cure deficiencies by amendments previously allowed" among grounds for dismissal with prejudice). The Seventh Circuit extends "considerable deference to the informed judgments of district judges who must decide whether to dismiss a case with prejudice when counsel repeatedly fails to plead properly." *Stanard v. Nygren*, 658 F.3d 792, 801 (7th Cir. 2011); *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (dismissal with prejudice appropriate where plaintiff's claims dismissed twice for same reason and plaintiff did not argue against dismissal with prejudice below).

All told, Nalco took five opportunities to plead a claim against the Defendants, and even got initial disclosures from Chem-Mod containing refined coal facility schematics. The Defendants made three fully briefed motions to dismiss, each time seeking dismissal with prejudice. Nalco fully responded each time—even seeking and obtaining leave to file a surreply on one occasion and submitting additional authority after the submission deadline on another. By the time it filed the 4AC, Nalco had already received two reasoned decisions explaining why its case failed and what allegations would be required to state a claim.

Yet when Nalco received the Defendants' motion to dismiss the 4AC, citing the same fundamental flaws as grounds for dismissal, Nalco did not seek leave to file a new complaint; it did not proffer a complaint that would correct the deficiencies identified by the Defendants' motion or meaningfully address the court's previous decisions; and it did not identify any facts that it could plead, if given the chance, that could correct the 4AC's manifest shortcomings. Indeed, Nalco did not even argue that it would be wrong to dismiss its 4AC "with prejudice," despite the Defendants' repeated explicit requests that the district court do so. *See, e.g.*, Appx2989; Appx2996; Appx3038.

Nalco elected to argue that the 4AC was legally sufficient, making essentially the same arguments it had made in defense of its previously dismissed, substantially similar complaints. The district court recognized that Nalco had failed to address the shortfalls identified in the court's earlier decisions, and dismissed the 4AC with prejudice. *See, e.g.*, Appx9 ("As stated in the Memorandum and Opinion [dismissing the 3AC], 'any argument that compliance with Section 45 of the tax code is evidence that Defendants direct and control the infringement of a patent is unpersuasive.'"); Appx6 ("As in its responses to Defendants' previous motions to dismiss, Nalco argues that Defendants' arguments are a premature attempt at claim construction.").

After finding that the 4AC failed to state a claim for the same reasons as its predecessors, and seeing no proffer from Nalco on the record, the district court was well within its discretion to make this dismissal "with prejudice." *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (district court was "within its rights" to dismiss Airborne's fourth amended complaint with prejudice where defendants bore the "significant cost" of having to brief three repetitive motions to dismiss); *see also Lyda*, 838 F.3d at 1340–41 (seeing "no reason to disturb the district court's application of its own internal rules," which "curtail[] leave to amend where the plaintiff declines to do so until after the court finds the pleadings insufficient").

There is, of course, no Seventh Circuit rule requiring a district court's **third** (or even second) dismissal decision to be "without prejudice." At most, plaintiffs in the Seventh Circuit are typically afforded **one** opportunity to correct defects after a district court identifies them. *See Foster v. DeLuca*, 545 F.3d 582, 584–85 (7th Cir. 2008) (following dismissal of original complaint, summary denial of motion to amend without explanation would be inappropriate). And even that rule has exceptions. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (plaintiff's **first** complaint properly dismissed with prejudice where plaintiff "did not request the opportunity to amend until its motion to amend or alter" the judgment under Rule 59(e) "and, most important, did not offer any meaningful

indication of how it would plead differently"). Nalco's reliance on *Foster* is, therefore, misplaced. *See* Br. 54–55 & n.16.

Nor is dismissal with prejudice limited to cases where the defendant shows "certain" futility of a proposed amendment, as Nalco argues. *Compare* Br. 54–55, *with Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, ***or*** where the amendment would be futile." (emphasis added) (citations omitted)). Putting aside that Nalco did not even satisfy its own condition precedent by seeking leave to amend or proposing an amendment, and Nalco's contention in the court below (apparently abandoned here) that a defendant must come forward with "evidence" of "certain" futility, the "rule" that Nalco announces is created out of whole cloth. *See* Br. 55 (stating Nalco's "rule," but without citation); *see also Foman*, 371 U.S. at 182 (stating correct standard); *Arreola*, 546 F.3d at 796 (same); *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 520 (7th Cir. 2015) (for an ***original*** complaint, dismissal with prejudice is appropriate only where "it appears to a certainty" that the plaintiff cannot state a claim under current law). Here, unlike the court in *Runnion*, the district court expressly allowed Nalco to re-plead twice, and unlike the plaintiff in *Runnion*, Nalco filed five complaints and never proffered a sixth.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING NALCO'S RECONSIDERATION MOTION.

"Motions for reconsideration [under Rule 59(e)] serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *accord Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (citations omitted).

Here, Nalco did not seek reconsideration of the district court's determination that the 4AC failed to state a claim—rather, it targeted for reconsideration only the court's decision that the dismissal was "with prejudice," a determination that itself is soundly within the discretion of the district court. *See supra*, Section IV. Yet Nalco failed to proffer a proposed amended complaint or otherwise explain the "exact nature of the amendments proposed"; that failure alone was enough to defeat a request for reconsideration. *Hecker v. Deere & Co.*, 556 F.3d 575, 590–91 (7th Cir. 2009) (quoting *Twohy v. First Nat'l Bank of Chi.,* 758 F.2d 1185, 1189 (7th Cir. 1985)).

The court also found that in seeking reconsideration, Nalco "fail[ed] to cite to the standard for Rule 59(e)" and "ma[de] no argument in the Motion that it ha[d] met the standard such that a Motion to Reconsider would be appropriate." Appx15. The district court would have been within its discretion to deny the motion for those reasons, too.

54

In its reply brief, Nalco disclosed the putative basis for its reconsideration motion: that the court had made a "manifest error" of law by failing to apply a "certain" futility standard in dismissing the 4AC with prejudice. Appx5468. As explained *supra*, Section IV, there is no such standard, and the court was within its discretion to make the dismissal with prejudice.

On appeal, Nalco chastises the district court for disregarding Nalco's last-minute dump of the new material it offered in support of its motion for reconsideration. Nalco concludes that the district court must have "***felt*** that Nalco's evidence [presented on reconsideration] did support its positions" on claim construction and other issues, because the court chided Nalco for failing to "incorporate[]" any of it "into [even] one version of its prior pleadings." Br. 56–57 (emphasis added). To the contrary, the court reviewed the new submission, as it was required to do by Rule 59(e), and correctly concluded that because these materials were available to Nalco since before the case began—a fact that Nalco cannot dispute—reconsideration was unwarranted. Appx16–17; *see also Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995) (reconsideration inappropriate based on plaintiff's "mere desire to expand the allegations of a dismissed complaint" (citation omitted)); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511–12 (7th Cir. 2007) ("facts . . . intentionally omitted" from a dismissed complaint cannot support reconsideration of dismissal decision); *Fannon v. Guidant Corp.*, 583 F.3d 995, 1003

(7th Cir. 2009) ("strategic decision not to put . . . new evidence into the record before the court rule[s] on [a] motion to dismiss" cannot justify reconsideration).

Oblivious to the rules limiting reconsideration to overlooked prior submissions or newly discovered evidence, Nalco insists on taking it one step further. Nalco also claims that "the district court's admonishment proves that the court viewed claim construction, and evidence pertaining to it, relevant to his dismissal." Br. 56–57. But by rule, the district court did not need to reach the question of how relevant Nalco's belated submission was—it only needed to determine whether it was "new." The court expressed no position whatsoever on Nalco's "argument that its claim construction is at least possible." *See* Appx15.

Nalco makes much of the Defendants' having ignored the substance of Nalco's submissions in successfully opposing Nalco's motion for reconsideration, touting its submissions as "unrefuted" five times in its opening brief. *See* Br. 20–21, 28, 52. Like the district court, the Defendants did not need to refute the contents of Nalco's factual submissions because they had no bearing on the reconsideration motion. Nalco could have presented that material to the court on multiple previous occasions, in the form of a pleading, where it would have been "accepted . . . as true for purposes of considering the Defendants' Motion to Dismiss" (*see* Appx16), but chose not to. The material was not previously submitted. As such, it was neither omitted from consideration nor overlooked by the district court on the motions to

dismiss, and it was therefore entirely irrelevant to the district court's decision on reconsideration.

Despite clear guidance from the district court, and five opportunities to draft a complaint, Nalco was never able to state a claim. Its suggestion that it should have been given yet another opportunity to craft yet another complaint whose allegations it never specified, based solely on information that it had all along, ignores the rules of procedure. The district court was well within its discretion to deny the motion for reconsideration.

*    *    *

The '692 Patent claims a method for treating flue gas that requires injecting a thermolabile molecular halogen precursor into the flue gas. Nowhere in the record is there any plausible suggestion that "injection" includes spraying chemicals onto cold coal; that "coal combustion flue gas" means all gases produced from coal combustion; or that "thermolabile" means a chemical that can withstand the temperatures of a furnace combustion zone. The 4AC shows that the Chem-Mod Solution is a process for making refined coal—the Defendants do not run power plants or have any responsibility for burning coal. *See supra*, 5 (diagram showing Chem-Mod Solution performed at "Clean Coal Plant" outside coal-fired power plant). On this record, the district court correctly concluded that Nalco, even after

five attempts, did not state a claim for infringement, and that the case should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed, with costs.

Dated:  January 23, 2017

Steven E. Feldman
Sherry L. Rollo
HAHN LOESER & PARKS
125 South Wacker Dr., Suite 2900
Chicago, IL 60606
Tel:  (312) 637-3000

Respectfully submitted,

/s/ Richard W. Mark

Richard W. Mark
    *Principal Attorney*
Joseph Evall
Paul J. Kremer
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-3818
Fax:  (212) 351-5338
rmark@gibsondunn.com

*Counsel for Defendants-Appellees*

**SUPPLEMENTAL ADDENDUM**

# TABLE OF CONTENTS

## ADDITIONAL ORDERS AND OPINIONS
## SUPPORTING JUDGMENT IN QUESTION

Northern District of Illinois District Court Order
    Granting Motion to Dismiss 1AC                   Appx489

Northern District of Illinois District Court Memorandum
    Opinion and Order Granting Motion to Dismiss 1AC     Appx490–96

Northern District of Illinois District Court Order
    Granting Motion to Dismiss 3AC                   Appx2090

Northern District of Illinois District Court Memorandum
    Opinion and Order Granting Motion to Dismiss 3AC     Appx2091–100

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | | |
|---|---|---|---|
| | ) | | |
| Nalco Company | ) | Case No: 14 C 2510 | |
| | ) | | |
| v. | ) | Judge: John W. Darrah | |
| | ) | | |
| Chem-Mod, LLC | ) | | |
| | ) | | |

## <u>ORDER</u>

Status hearing and ruling on motion hearing held. For the reasons stated in the attached
memorandum opinion and order, Defendants' Motion [25] is granted. Nalco's Amended
Complaint is dismissed without prejudice. Nalco is granted leave to amend, if it can do so
pursuant to Rule 11, within thirty days of this Order. Enter Memorandum Opinion and Order.
Status hearing set for to 2/18/15 at 9:30 a.m.


(T:) 00:05


Date:  2/4/15                                                /s/ Judge John W. Darrah

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NALCO COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-cv-2510 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| CHEM-MOD, LLC; | ) | |
| ARTHUR J. GALLAGHER & CO.; and | ) | |
| GALLAGHER CLEAN ENERGY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nalco Company ("Nalco") has brought this action alleging patent infringement against Defendants Chem-Mod, LLC ("Chem-Mod"); Arthur J. Gallagher & Co. ("AJG"); and Gallagher Clean Energy, LLC ("GCE"). Defendants have moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. For the reasons discussed below, Defendants' Motion [25] is granted. The First Amended Complaint is dismissed without prejudice.

## BACKGROUND

The following is taken from the First Amended Complaint ("FAC"), which is assumed to be true for purposes of a motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Nalco is a provider of air protection technologies. (FAC ¶ 11.) Nalco is the exclusive licensee of U.S. Patent 6,808,692 (the "692 Patent"), which teaches a method for that reducing mercury emissions from flue gases evolved during the combustion of coal. (*Id.* ¶¶ 12-13.) The 692 Patent was issued by the United States Patent & Trademark Office

("USPTO") on October 26, 2004, and reexamined by the USPTO in April 2014. (FAC ¶ 14.)

Specifically, Claim 1 of the 692 Patent teaches:

> A method of treating coal combustion flue gas containing mercury, comprising: injecting a bromide compound that is a thermolabile molecular bromine precursor into said flue gas to effect oxidation of elemental mercury to a mercuric bromide and providing alkaline solid particles in said flue gas ahead of a particulate collection device, in order to absorb at least a portion of said mercuric bromide.

(*See, e.g.,* FAC, Ex. A at 10, cl.1.)

According to Nalco, Defendants have infringed the 692 Patent through their use, licensing, sale, and offer of a coal additive system known as "Chem-Mod™ Solution." (FAC ¶¶ 17, 26, 31.) Chem-Mod™ Solution is a method of treating coal combustion flue gas that comprises dual injection of two additives, "MerSorb" and "S-Sorb," which contain calcium bromide and lime. (*Id.* ¶ 17.) The additives are mixed with the coal when the coal is on the feed belts and before the coal is fed into the furnace of power plants for burning. (*Id.*) The additives "react with the contaminant gases" and "are used to absorb toxic gases such as mercury . . . that are emitted during the combustion of coal." (FAC ¶ 17; Ex. B at 2.)

Nalco alleges that Chem-Mod™ Solution practices each and every step of Claim 1 of the 692 Patent. (*Id.* ¶¶ 17-18.) In its three-count Amended Complaint, Nalco asserts claims for direct infringement, inducement of infringement, and contributory infringement. (*Id.* ¶¶ 20-21, 25-26, 31-32.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

## ANALYSIS

### *Direct Infringement*

Defendants argue that Nalco has failed to state a claim for direct infringement because Nalco's allegations do not establish "use" of the 692 Patent, and further, because the patented method is different from the accused Chem-Mod$^{TM}$ Solution. Nalco responds that it has sufficiently alleged direct infringement and that Defendants' arguments are a premature attempt at claim construction.[1]

### "Use" of a Method Patent

35 U.S.C. § 271(a) defines patent infringement, in pertinent part, as follows: "whoever without authority makes, uses, offers to sell, or sells any patented invention[ ] within the United States . . . infringes the patent." 35 U.S.C. § 271(a). Defendants argue that the 692 Patent is a "method patent" (a patent on a process) and can be infringed only by "use" of that

---

[1] On January 13, 2015, Nalco was granted leave to file a sur-reply. As stated on the record, the Court has not considered any new arguments raised by Nalco in its sur-reply. Specifically, Nalco has attached to its sur-reply its LPR 2.2 Initial Infringement Contentions ("IICs"). These Contentions are not properly submitted for the Court's consideration of Defendants' Motion to Dismiss and have been disregarded.

Appx492

method under Federal Circuit law. Defendants contend that Nalco's allegations establish licensing and sale, but not use, of the 692 Patent. Nalco does not dispute that the 692 Patent is a method patent, but counters that its allegations are sufficient to establish infringement under Section 271 and that the Federal Circuit has not established that "use" is required to infringe a method patent.

In support of their argument, Defendants cite the Federal Circuit decision, *NTP, Inc. v. Research In Motion*, 418 F.3d 1282, 1319 (Fed. Cir. 2005). However, the Federal Circuit in that case specifically *declined* to make the holding that Defendants attribute to it, stating clearly that: "We need not and do not hold that method claims may not be infringed under the 'sells' and 'offers to sell' prongs of section 271(a)." *Id.* at 1320-21. Likewise, the other case cited by Defendants, *Ricoh Co. v. Quanta Computer, Inc.*, 579 F. Supp. 2d 1110, 1123 (W.D. Wis. 2007), was vacated and remanded in part by the Federal Circuit, which again declined to definitively rule whether selling or offering to sell a patented process infringes the patent. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("As did the court in *NTP*, we conclude that we need not definitively answer this question to conclude as a matter of law that Quanta did not sell or offer to sell the invention covered by Ricoh's method claims.").

Accordingly, as Nalco correctly argues, the Federal Circuit has left open the question whether a method patent can be infringed under Section 271(a) by selling or offering to sell the process covered by the patent. *See NTP, Inc.*, 418 F.3d 1319; *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012) ("We need not decide whether a method patent can be directly infringed by offering to sell the patented method in order to resolve this appeal"). Indeed, some courts following *NTP* have held that 271(a) does apply to selling or offering to sell a patented method. *See, e.g., CLS Bank Int'l v.*

4

Appx493

*Alice Corp. Pty.*, 667 F. Supp. 2d 29, 37 (D.D.C. 2009) ("Thus, the Court finds that one who "sells" or "offers to sell" each and every step of a patented method infringes the patent.");

*Optigen, LLC v. Int'l Genetics, Inc.*, 777 F. Supp. 2d 390, 403 (N.D.N.Y. 2011) (rejecting defendant's argument that "sells" and "offers to sell" language in Section 271(a) does not apply to method patents). Furthermore, reading the allegations in favor of Nalco as required, Nalco has, in fact, alleged "use" of the 692 Patent. (*See* FAC ¶ 17.) Defendants' argument on this point is unpersuasive and rejected.

<u>Differences Between the 692 Patent and Chem-Mod<sup>TM</sup> Solution</u>

Defendants next argue Nalco fails to state a claim for direct infringement because the 692 Patent differs from the accused process, Chem-Mod<sup>TM</sup> Solution. A copy of the 692 Patent is attached to the FAC as Exhibit A and states that the 692 Patent is "a method of treating coal combustion flue gas . . . , by injecting a bromide compound . . . into said flue gas." (FAC, Ex. A at 10, cl. 1; *see also* FAC ¶ 14.) In contrast, Chem-Mod<sup>TM</sup> Solution "comprises dual injection of two additives on the coal feed belts of coal burning power generation stations before the coal is fed into a coal combustion process." (FAC ¶ 17.) Further, according to Exhibit C, Chem-Mod<sup>TM</sup> Solution is "an alternative" to "inject[ing] powdered activated carbon . . . into the exhaust pipes of a coal furnace." (FAC, Ex. C at 52.)

To infringe a method patent, every step of the method must be performed. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."). Here, Nalco's own allegations and attached exhibits contradict that the Chem-Mod<sup>TM</sup> Solution directly infringes the method patent found in the 692 Patent. The 692 Patent involves injecting chemicals into flue gas after the coal has been burned, whereas the

Chem-Mod[TM] Solution is a method that adds sorbents to cold coal when it is on the coal feed belts and before it is combusted. Thus, according to the FAC itself, the 692 Patent differs from the Chem-Mod[TM] Solution in both when it is applied (after the coal is burned vs. before the coal is burned) and how it is applied (injected into the flue gas vs. mixed with cold coal).[2]

Although Nalco argues that dismissal should be postponed until after claim construction, Nalco must plead a plausible case of patent infringement to survive a Rule 12(b)(6) motion. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law."); *see also Gharb v. Mitsubishi Elec. Automation, Inc.*, No. 10 C 07204, 2012 WL 1986435, at *7-8 (N.D. Ill. June 4, 2012) (dismissing patent infringement claim pursuant to 12(b)(6), where the complaint and its attached exhibits contradicted that patent was infringed). Because Nalco has not done so, its claim for direct infringement must be dismissed.

*Indirect Infringement*

Defendants also argue that Nalco's two claims for indirect infringement, inducement of infringement and contributory infringement, should be dismissed. To state a claim for inducement of infringement, the patentee must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008). Since Nalco has failed to sufficiently allege direct infringement, its claim for inducement of infringement under Section 271(b) must

---

[2]     In its response brief, Nalco suggests, for the first time, that the Chem-Mod[TM] Solution may also be applied in a different manner than that pleaded in Nalco's Amended Complaint. *See* Pl.'s Resp. Br. at 8. As Nalco has not properly alleged facts in its Amended Complaint supporting this argument, it has been disregarded.

Appx495

also be dismissed.  *See Limelight Networks, Inc.,* 134 S.Ct. at 2117 ("where there has been no direct infringement, there can be no inducement of infringement under § 271(b)").

Similarly, for contributory infringement, Nalco must allege direct infringement and that the Defendants knew that the combination of its components "was both patented and infringing [with] no substantial non-infringing uses."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (internal citations omitted); *see also* 35 U.S.C. § 271(c).  Thus, as with its inducement claim, Nalco's claim for contributory infringement under Section 271(c) must be dismissed because Nalco has not sufficiently alleged direct infringement.

## CONCLUSION

For the reasons discussed below, Defendants' Motion [25] is granted.  Nalco's Amended Complaint is dismissed without prejudice.  Nalco is granted leave to amend, if it can do so pursuant to Rule 11, within thirty days of this Order.

Date:____February 4, 2015____          _____
                                        JOHN W. DARRAH
                                        United States District Court Judge

7

Appx496

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

|                    |     |                          |
|--------------------|-----|--------------------------|
| Nalco Company      | )   | Case No: 14 C 2510       |
|                    | )   |                          |
| v.                 | )   | Judge: John W. Darrah    |
|                    | )   |                          |
| Chem-Mod, LLC      | )   |                          |
|                    | )   |                          |

### <u>ORDER</u>

Status hearing and ruling on motion hearing held. For the reasons stated in the attached memorandum opinion and order, Defendants' Motions to Dismiss [68, 89] are granted. Nalco's Third Amended Complaint is dismissed without prejudice. Nalco is granted leave to amend, if it can do so pursuant to Rule 11, within thirty days of this Order. Enter memorandum opinion and order. Status hearing set for 11/18/15 at 9:30 a.m.

(T:) 00:05

Date:   10/15/15                                   /s/ Judge John W. Darrah

Appx2090

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NALCO COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-2510 |
| | ) | |
| CHEM-MOD, LLC; ARTHUR J. GALLAGHER & CO.; | ) | Judge John W. Darrah |
| GALLAGHER CLEAN ENERGY, LLC; | ) | |
| AJG COAL, INC.; AJG IOWA REFINED COAL LLC; | ) | |
| MANSFIELD REFINED COAL LLC; | ) | |
| COPE REFINED COAL LLC; | ) | |
| CROSS REFINED COAL LLC; | ) | |
| JEFFERIES REFINED COAL LLC; | ) | |
| JOPPA REFINED COAL LLC; | ) | |
| THOMAS HILL REFINED COAL LLC; | ) | |
| WAGNER COALTECH LLC; | ) | |
| WALTER SCOTT REFINED COAL LLC; | ) | |
| WINYAH REFINED COAL LLC; | ) | |
| BEDFORD MIX LLC; | ) | |
| BRANDON SHORES COALTECH LLC; | ) | |
| CANADYS REFINED COAL, LLC; | ) | |
| CORONADO REFINED COAL LLC; | ) | |
| FRM TRONA FUELS LLC; | ) | |
| FRM VIRGINIA FUELS LLC; | ) | |
| GEORGE NEAL NORTH REFINED COAL LLC; | ) | |
| GEORGE NEAL REFINED COAL LLC; | ) | |
| LOUISA REFINED COAL, LLC; | ) | |
| REFINED FUELS OF ILLINOIS, LLC; and | ) | |
| BELLE RIVER FUELS COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nalco Company ("Nalco") filed a Third Amended Complaint against

Defendants Chem-Mod, LLC ("Chem-Mod"); Arthur J. Gallagher & Co. ("A.J. Gallagher");

Gallagher Clean Energy, LLC ("Gallagher Clean Energy"); AJG Coal, Inc. ("AJG Coal"); and

21 limited liability companies named: AJG Iowa Refined Coal LLC; Mansfield Refined Coal

LLC; Cope Refined Coal LLC; Cross Refined Coal LLC; Jefferies Refined Coal LLC; Joppa Refined Coal LLC; Thomas Hill Refined Coal LLC; Wagner Coaltech LLC; Walter Scott Refined Coal LLC; Winyah Refined Coal LLC; Bedford Mix LLC; Brandon Shores Coaltech LLC; Canadys Refined Coal, LLC; Coronado Refined Coal LLC; FRM Trona Fuels LLC; FRM Virginia Fuels LLC; George Neal North Refined Coal LLC; George Neal Refined Coal LLC; Louisa Refined Coal, LLC; Refined Fuels of Illinois, LLC; and Belle River Fuels Company, LLC (collectively "Refined Coal LLCs").  The Complaint alleges patent infringement of United States Patent No. 6,808,692 (the "692 Patent"), entitled "Enhanced Mercury Control in Coal-Fired Power Plants."   Defendants previously moved to dismiss Nalco's First Amended Complaint ("FAC").  On February 4, 2015, Defendants' Motion was granted, and Plaintiff's First Amended Complaint was dismissed without prejudice.  On April 24, 2015, Plaintiff filed a Third Amended Complaint ("TAC").  Defendants filed Motions to Dismiss [68, 89] Plaintiff's Third Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  For the reasons set forth below, the Motions are granted.

## BACKGROUND

The following is taken from the Third Amended Complaint, which is assumed to be true for purposes of a motion to dismiss.  *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  Nalco is the exclusive licensee of the 692 Patent, which claims a method to reduce mercury emission from flue gases evolved during the combustion of coal.  The 692 Patent was issued by the United States Patent & Trademark Office ("USPTO") on October 26, 2004, and reexamined by the USPTO in April, 2014.  Claim 1 of the 692 Patent is directed to:

> A method of treating coal combustion flue gas containing mercury, comprising:
> injecting a bromide compound that is a themolabile molecular bromine precursor
> into said flue gas to effect oxidation of elemental mercury to a mercuric bromide

2

and providing alkaline solid particles in said flue gas ahead of a particulate
collection device, in order to absorb at least a portion of said mercuric bromide.

(TAC Exh. 1.) The TAC alleges that Defendants infringed the 692 Patent through their use,
licensing, sale, and offer of a coal additive system known as "Chem-Mod Solution." Chem-Mod
Solution is a method of treating coal combustion flue gas containing mercury. (TAC ¶ 24.) In
the Chem-Mod Solution, a proprietary additive, MerSorb, is mixed with coal when it is on feed
belts before the coal is fed into power plant furnaces for burning. (TAC ¶ 26.) The mixture of
coal and MerSorb (the "Chem-Mod Solution Mixture") is pulverized and injected into a coal-
fired power plant via coal injectors. (TAC ¶ 27.) The Chem-Mod Solution also incorporates the
use of an additive called S-Sorb, which can be added at various locations in the coal-fired power
plant. S-Sorb can be added to the mixture of coal and MerSorb prior to injection, to the upper
level of the furnace, and/or to ash on the ash refiring distribution line. (TAC ¶ 30.) The two
additives react with elemental mercury in coal combustion flue gas and effect the oxidation of
elemental mercury to mercuric bromide (TAC ¶ 32.) The mercuric bromide adsorbs onto
alkaline solid particles in the coal combustion flue gas, allowing mercury to be removed with the
solid particles. (TAC ¶ 33.)

Nalco alleges that Defendants directly infringe the 692 Patent through their use of the
Chem-Mod Solution and/or through their control and direction of entities that have used the
Chem-Mod Solution. Nalco also alleges that Defendants indirectly infringe the 692 Patent by
inducing and contributing to the infringing use of the Chem-Mod Solution by others. Similar to
the FAC, the TAC asserts claims for direct infringement, indirect infringement, and contributory
infringement. Defendants filed two separate motions to dismiss. The Refined Coal LLCs join
the arguments made by the other Defendants, thus both motions will be addressed here.

Appx2093

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

A direct infringement claim that meets or exceeds Form 18 of the Federal Rules of Civil Procedure meets Rule 8's "short and plain statement" requirement. *In re Bill of Lading*, 681 F.3d 1323, 1332 (Fed. Cir. 2014). Form 18 requires:

> (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*Bill of Lading*, 681 F.3d at 1334.

## ANALYSIS

As a preliminary matter, Nalco argues at length that Defendants' qualification for Section 45 tax credits proves that the Refined Coal LLCs direct and control the injection of the

Appx2094

Chem-Mod Mixture into an operating coal furnace and the alleged infringement of the 692 Patent. Nalco contends that the regulations governing Section 45 tax credits require that the Chem-Mod Solution Mixture be sold to a power plant operator by a third party (here, the Refined Coal LLCs) and then be used in combustion to produce steam through injection into coal combustion flue gas in an operating coal furnace.

Section 45 tax credits are obtained by selling refined coal to an unrelated person with the reasonable expectation that it will be used for the purpose of producing steam. 26 U.S.C. § 45(a)(2)(B), 45(c)(7)(A). The tax code requirements focus on the production and sale of refined coal suitable for qualified use and require reasonable expectation as to that use. Defendants are not required to inject any substance into flue gas or practice any other specific process in order to qualify for Section 45 tax credits. The requirements of a Section 45 tax credit do not automatically equate to the elements required for patent infringement. Any argument that compliance with Section 45 of the tax code is evidence that Defendants direct and control the infringement of a patent in this case is unpersuasive and unconvincing.

*Direct Infringement*

Defendants argue that Nalco's claims of direct infringement must be dismissed because the Chem-Mod Solution cannot infringe because it is a different method for reducing mercury pollution than the process claimed in the 692 Patent. Defendants further argue that the TAC fails to allege that any Defendant is responsible for all steps of the patent. Nalco argues that Defendants' argument is "based on an improper construction of the claims of the 692 Patent" and that the claims of the patent are not restricted to Defendants' interpretation. As in its response to Defendants' motion to dismiss Nalco's FAC, Nalco responds that it has sufficiently alleged

5

Appx2095

direct infringement and that Defendants' arguments are a premature attempt at claim construction.

Nalco argues that the claims of the 692 Patent do not provide when the step of "injecting a bromide compound . . . into said flue gas" must be performed, how the injection must be conducted, or the specific mechanism by which or location within the coal-fired power plant at which the injecting must occur. (TAC ¶¶ 18, 29, 20.) The previous order in this case dismissed Nalco's claims because the allegations in the FAC and attached exhibits showed that the 692 Patent differed from the Chem-Mod Solution in both when it is applied (after the coal is burned vs. before the coal is burned) and how it is applied (injected into the flue gas vs. mixed with cold coal). In the TAC, Nalco argues that the Chem-Mod Solution infringes on the 692 Patent by comparing and equating the steps of the Chem-Mod Solution to the steps of the method claimed in the 692 Patent. In the Chem-Mod Solution, a bromide compound, MerSorb, is injected via coal injectors into a coal-fired power plant furnace. In its response to Defendants' Motion, Nalco argues that when a coal furnace is operating, the furnace contains the gaseous products of coal combustion, or coal combustion flue gas. However, there is no support for this allegation in the TAC. The TAC refers to a process flow diagram that shows the addition of MerSorb to the coal in three different locations: (1) on the coal feed belt before it reaches the coal bunker; (2) between the coal bunker and the coal feeder; and (3) in the coal feeder before the coal is pulverized. (TAC ¶ 27; Exh. B.) In all three of those locations, the MerSorb and coal mixture is added to the process prior to coal combustion. Thus, the additives used in the Chem-Mod Solution are introduced prior to any interaction with coal combustion flue gas and are not "injected," as required by the elements of the 692 Patent.

6

Nalco also argues that it is inappropriate to ask the Court to construe the patent claim at the motion to dismiss stage, citing to *Pragmatus AV, LLC v. Yahoo! Inc.,* No. CIV.A. 11-902-LPS, 2012 WL 6044793 (D. Del. Nov. 13, 2012), to support its argument. (Dkt. 76.) However, the court in *Pragmatus* stated that, "where facts of record at the pleading stage will so clearly and explicitly indicate that an 'undivided' claim of direct infringement cannot stand — in a manner that could not plausibly be challenged at a later claim construction hearing" dismissal will be appropriate, citing *Desenberg v. Google, Inc.,* 392 Fed. App'x 868 (Fed.Cir.2010). *Pragmatus,* 2012 WL 6044793, at *8. Even accepting all well pled allegations as true, the TAC fails to cure the issues leading to the FAC's dismissal and does not establish a claim for direct infringement by the use of the Chem-Mod Solution. Because claims of indirect and willful infringement require proof of direct infringement, those remaining claims are also dismissed.

Even if the TAC adequately pled a claim that the Chem-Mod Solution meets the elements of the 692 Patent, it fails to allege that Defendants are responsible for both preparing the Chem-Mod Solution Mixture and injecting the treated coal into coal combustion flue gas. Defendants contend that no Defendant controls the coal injectors that add the Chem-Mod Solution Mixture to coal combustion flue gas and that all of the steps of the Chem-Mod Solution are not attributable to one actor. To infringe a method patent, performance of all steps of the method must be attributable to a single party. *See Limelight Networks, Inc. v. Akami Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable for the infringement. An entity is responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance; and (2) where the actors form a joint enterprise." *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, No. 2009-1372, 2015 WL 4760450, at *1

(Fed. Cir. Aug. 13, 2015) (finding that liability under 271(a) can be found if the actor acts through an agent, contracts with another to perform one or more steps of a claimed method, or when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps and establishes the manner or timing of that performance).

The TAC alleges that each of the Refined Coal LLCs operates one or more plants solely for the purpose of preparing the Chem-Mod Solution Mixture and assisting an operator of a coal-fired plant to use the Chem-Mod Solution.  (TAC ¶ 21.)  Nalco argues that the TAC supports their argument that the Refined Coal LLCs direct and control the infringing acts of coal-fired power plants, by alleging that Defendants participate in a joint enterprise to receive Section 45 tax credits.  Nalco alleges that the scheme requires the Refined Coal LLCs to sell the Chem-Mod Solution Mixture to coal-fired power plants at a loss, and then requires those power plants to inject the Chem-Mod Solution Mixture into coal combustion flue gas in order for the Refined Coal LLCs to receive Section 45 tax credits.  Again, this argument is unconvincing.  The fact that the Refined Coal LLCs receive Section 45 tax credits is not evidence that they direct and control the alleged infringing actions of each coal-fired power plant, and the TAC does not sufficiently support the presence of a joint enterprise.  Nalco claims that Defendants direct or control the actions of the coal-fired power plants, but the TAC does not support these allegations.

Nalco also argues that Refined Coal LLCs must test the use of the Chem-Mod Solution in order to qualify for Section 45 tax credits and that during the on-site full scale testing of the Chem-Mod Solution at individual power plants, Defendants control all aspects of the infringing

method[1]. (TAC ¶ 53.) While the TAC alleges that Defendants direct on-site full scale testing of the Chem-Mod Solution for the individual coal-fired power plants, it does not allege that this testing constitutes direct infringement of the 692 Patent. As Defendants point out, the TAC does not describe the extent of this testing, whether it involves measurement of emissions, or whether Defendants direct or control the operations of the individual power plant itself. Instead, Nalco merely states Defendants direct on-site full scale testing of the Chem-Mod Solution, and makes this assertion in support of its argument that the Refined Coal LLCs direct and control the individual power plants. Nalco has not pled a plausible case of direct infringement of the 692 Patent, and its claim for direct infringement must be dismissed.

*Indirect Infringement*

To state a claim for inducement of infringement, the patentee must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008). Nalco has failed to sufficiently allege a claim for direct infringement, and even if Nalco had sufficiently stated its claim, it fails to plead intent to cause infringement. Nalco again relies on Defendants' receipt of Section 45 tax credits to support its claim of intent. As noted before, this is unpersuasive. Thus, Nalco's claim for inducement of infringement under Section 271(b) must also be dismissed.

For contributory infringement, Nalco must allege direct infringement and that Defendants "knew that the combination of its components was both patented and infringing with no

---

[1] Nalco asserts, for the first time, that that Refined Coal LLCs' testing of the Chem-Mod Solution in order to ascertain whether they qualify for Section 45 tax credits is direct infringement of the 692 Patent. Nalco has not properly alleged facts in the TAC to support this argument.

9

substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009); 35 U.S.C. § 271(c). The TAC fails to adequately claim contributory infringement because it does not plead any facts to support Nalco's argument that MerSorb and S-Sorb have no substantial non-infringing uses. Further, as with its inducement claim, Nalco's claim for contributory infringement must be dismissed because Nalco has not sufficiently alleged direct infringement. Nalco was provided an opportunity to re-plead its allegations but has failed to plead a plausible case of patent infringement. Thus, Nalco's Third Amended Complaint is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss [68, 89] are granted. Nalco's Third Amended Complaint is dismissed without prejudice. Nalco is granted leave to amend, if it can do so pursuant to Rule 11, within thirty days of this Order.

Date: _____October 15, 2015_____ 

_____
JOHN W. DARRAH
United States District Court Judge

10

Appx2100

## CERTIFICATE OF SERVICE

I, Richard W. Mark, hereby certify that I caused the foregoing to be filed via the Court's CM/ECF system and served on counsel of record who have registered for such service on January 23, 2017.

/s/ Richard W. Mark

Richard W. Mark

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,336 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated:  January 23, 2017

/s/ Richard W. Mark
Richard W. Mark

*Counsel for Defendants-Appellees*
